## NAERT v. WESTERN UNION TELEGRAPH CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—SETTLE-
MENT WITH WRONGDOER DOES NOT RELEASE EMPLOYER.

   Where a mother, as administratrix of her son's estate, made
   a settlement with the wrongdoer in an accident, whereby
   her son was killed, she did not thereby release the son's
   employer from liability to dependents under the work-
   men's compensation act.

2. SAME—SETTLEMENT DOES NOT RELEASE WRONGDOER FROM LIA-
BILITY TO EMPLOYER.

   Under section 15, part 3, of the workmen's compensation act
   (2 Comp. Laws 1915, § 5468), the employer has a right
   to recover such payments as he is obliged to make from
   the third person legally liable for the injury, and such
   right would not be affected by any settlement made by
   the legal representatives of the injured person with said
   third person, since the latter must be held to have pro-
   ceeded with knowledge of the fact that he might be
   called upon to respond to the employer who is primarily
   legally liable under the act.

Certiorari to Industrial Accident Board. Submitted
May 1, 1919. (Docket No. 70.) Decided May 29,
1919.

Romanie Naert and others presented a claim for
compensation against the Western Union Telegraph
Company for the accidental death of claimants' dece-
dent in defendant's employ. From an order awarding
compensation, defendant brings certiorari. Affirmed.

*Corliss, Leete & Moody* and *Benjamin S. Pagel,* for
appellant.

*Edward H. Kennedy,* for appellees.

Certiorari to the industrial accident board. Joseph
Naert, son of claimant, Romanie Naert, and half

brother of claimant, Mary Naert, was killed on April 24, 1918. He was a telegraph messenger working for respondent at the time of his death. In delivering messages he used a motorcycle. On the day of his death he was riding at a high rate of speed in an easterly direction on Mack avenue. At Baldwin avenue a truck belonging to the Cottage Grove Creamery Company was being driven north across Mack. The motorcycle struck the truck with such violence that Joseph Naert was instantly killed. It is conceded by respondent that the accident arose out of and in the course of the employment and that the average weekly earnings of the boy were sufficient to warrant a maximum award of $10 per week for 300 weeks. The dependency of the mother and sister of the deceased lad likewise is conceded, or, if not conceded, is not seriously questioned. The sole controversy between the parties arises out of the following facts:

The Cottage Grove Creamery Company at the time of the accident was carrying industrial insurance. On the day after the lad was killed a representative of the insurance company called upon Romanie Naert, mother of the deceased, and it being ascertained that Mrs. Naert was without funds to defray the funeral expenses of her son, Mr. Frick, the manager of the Cottage Grove Creamery Company, volunteered to—

"see to it that the funeral was paid for either by them or the insurance company."

The negotiations between Mrs. Naert and the Cottage Grove Creamery Company and the insurance company carrying the risk seem to have been carried on by one Gaston Verdon, a friend of the Naerts. Within a day or two the lad was buried and on April 30th, the arrangements having been completed, an application was made by Mrs. Naert to the probate court for her appointment as administratrix of the

estate of her deceased son. She on the same day was appointed such administratrix and likewise upon the same day filed a petition for leave to accept the sum of $176 from the Cottage Grove Creamery Company for a release of said company:

"On account of all liability on its part for damages to said estate on account of said accident."

An order having been made by the probate judge said sum of $176 was paid by the creamery company or the insurance company in the form of checks to the undertaker, the florist and the priest who had rendered services in connection with the funeral. A further sum of $24 was paid by the creamery company directly to the mother in consideration of a release from her to it—

"of and from all claims, demands, damages, actions and causes of action, including all claims on account of loss of service, now existing or hereafter accruing on account of injuries accidentally sustained by Joseph Naert and death resulting therefrom on or about the 24th day of April."

Romanie Naert is a Belgian, unacquainted with the English language. She testified:

"There was a man came there and asked if I straightened up the matter for the funeral, and for the motorcycle; he would give me that. If I did not take that, that I would have nothing. * * *

"A. They told me it was for the accident of the boy, to pay his funeral expenses.

"Q. Did they say anything further if you did not sign for it?

"A. They said that he would give me that money, that they would give me that money for funeral expenses. He offered me $200 for the expenses, and the leavings was for me. If I would not take that, I would have nothing. That is what he said.

"Q. That is all. You had no lawyer representing you, did you?

"A. No."

All the court proceedings were carried out and the money was paid on the same day, April 30th, which was the 6th day after the death of Joseph Naert. Later, on the 11th day of September, 1918, Romanie Naert applied to the industrial accident board for compensation under the statute. The award on arbitration provided for $10 per week for 300 weeks. This was affirmed by the full board in all things except that the award was made payable one-half to the mother and one-half to the sister of the deceased boy.

It is the claim of the appellant that Romanie Naert, by executing the releases to the Cottage Grove Creamery Company on April 30th, has deprived the Western Union Telegraph Company of its right to sue the creamery company for the amount of compensation the telegraph company will be obliged to pay to her and to Mary Naert under the award of the board. This contention raises the only question in the case.

BROOKE, J. (*after stating the facts*). We have held (*Vereeke* v. *City of Grand Rapids*, 203 Mich. 85), that a beneficiary by accepting compensation under the act from her decedent's employer did not thereby release the original wrongdoer "from liability in an action for the benefit of the heirs at law or the creditors," of the deceased. The converse of that proposition is here presented. Did Romanie Naert by accepting a settlement as administratrix of her son's estate or as an individual for all claims against the Cottage Grove Creamery Company, growing out of her son's death, thereby release her son's employer from liability under the act? We think not. The act provides, section 1 of part 6 (2 Comp. Laws 1915, § 5488), as follows:

"If the employee, or his dependents, in case of his death, of any employer subject to the provisions of this act files any claim with, or accepts any payment

from such employer, or any insurance company carrying such risks, or from the commissioner of insurance on account of personal injury, or makes any agreement, or submits any question to arbitration under this act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury."

As was pointed out in the *Vereeke Case*, the act nowhere compels election on the part of the dependent as it does on the part of the injured party himself. We are disposed to hold that the releases executed by Romanie Naert to the Cottage Grove Creamery Company were of no force and effect, as between the employer of the dead boy and the Cottage Grove Creamery Company, in an action brought by the telegraph company to recover the compensation it is called upon to pay under the award of the board. Section 15 of part 3 (2 Comp. Laws 1915, § 5468) clothes the employer with the absolute right to recover such payments as it is obliged to make from the third person legally liable for the injury. Such third person, in this case, the Cottage Grove Creamery Company, in adjusting a claim with the legal representatives of the injured person must be held to have proceeded with knowledge of the fact that it might be called upon to respond to the employer who is primarily legally liable under the terms of the act to the injured party or to his dependents in case of his death. The industrial accident board held under such proofs as were introduced at the hearing that the death of the boy was not caused "under circumstances creating a legal liability" in the Cottage Grove Creamery Company; that the payment of $200 to Romanie Naert was a mere gratuity and that her releases to the Cottage Grove Creamery Company constituted no bar to her right to compensation from the telegraph company.

Under our view of the case it is unnecessary to either agree or disagree with these holdings. So long

as the telegraph company is left free to proceed against the Cottage Grove Creamery Company as though no settlement had been made it has no reason for complaint, and that we hold to be its present status herein.

The award is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.