CITY OF GRAND RAPIDS *v.* CROCKER.

1. STATUTES—INTERPRETATION.
   In the interpretation of a statute the intention of the legislature should be ascertained, and, if possible, effect given to every word, sentence, and section thereof.

2. SAME—WHEN INTERPRETATION UNNECESSARY.
   If the language employed in a statute is plain, certain, and unambiguous, a bare reading suffices and no interpretation is necessary.

3. SAME—WORD OR PHRASE PRESUMED TO BE USED IN SAME SENSE IN DIFFERENT PARTS OF STATUTE.
   Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout.

4. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—"EMPLOYEE" EMBRACES DEPENDENTS.
   The use of the word "employee" in various sections of the workmen's compensation act reviewed, and *held,* to embrace the dependents of the employee as well as the employee himself.

5. SAME—ELECTION OF REMEDY BY DEPENDENT BINDING UPON REPRESENTATIVES OF DECEASED EMPLOYEE.
   Since the provisions of the workmen's compensation act are in effect read into the contract of employment between employer and employee, they are as binding upon the personal representatives of a deceased employee as upon the employee himself, and, therefore, under section 15, part 3, of the act (2 Comp. Laws 1915, § 5468), an election by dependents to take under the act is a bar to an action brought by the administrator against the wrongdoer under either the survival or death acts, and when such election is made the employer is subrogated to the rights of such dependents and may recover from the wrongdoer to the extent of the liability imposed on him under the act; overruling the cases of *Vereeke* v. *City*

*of Grand Rapids,* 203 Mich. 85, and *Naert* v. *Telegraph Co.,* 206 Mich. 68.

6. SAME—EMPLOYER'S RIGHT TO RECOVER COMPENSATION PAID NOT BARRED BY DEPENDENT'S RECOVERY IN ACTION AT LAW.

Where the widow of a deceased employee received compensation as a dependent under the workmen's compensation act for the death of her husband, and also recovered as administratrix of his estate in an action at law against the wrongdoer, the right' of the employer to recover from the wrongdoer the amount paid under the act, under section 15, part 3, was not barred thereby, since the employer was not a party to said action, and its right to bring an action against the wrongdoer became fixed when the agreement for compensation was entered into and approved.

7. SAME—DEFENSES AVAILABLE AGAINST ADMINISTRATOR MAY BE INTERPOSED IN EMPLOYER'S ACTION.

In employer's action against the wrongdoer to recover the amount of compensation paid dependents of deceased employee under the workmen's compensation act, the defendant has a right to interpose any defense which would have been available had the suit been brought by the administrator of deceased's estate.

8. SAME—NEGLIGENCE OF DRIVER OF FIRE TRUCK NOT IMPUTABLE TO FIREMAN RIDING IN TRUCK.

Where deceased employee was a fireman in the employ of the city, and his death was caused by a collision between the fire truck in which he was riding to a fire and defendant's automobile, the negligence, if any, of the driver of the fire truck was not imputable to deceased, in an action by the city to recover compensation paid under the workmen's compensation act.

9. APPEAL AND ERROR—REFUSAL OF REQUESTS TO CHARGE.

The trial court was not in error in refusing requests to charge the substance of which was included in the charge as given.

10. SAME—EVIDENCE—HARMLESS ERROR.

Although it was error to admit the testimony of a witness that defendants' automobile, at the time of the collision, was being driven "ever so much faster" than cars were "commonly" driven on that street, said error *held,* in view of the entire record, not to justify reversal of the case.

11. MASTER AND SERVANT—EMPLOYER'S ACTION AGAINST WRONG-
     DOER—DAMAGES RECOVERABLE.
         Defendants' contention that plaintiff's recovery should have
         been limited to the amount paid at the time the action
         was begun is without merit, since, when defendants' lia-
         bility was established, the amount paid by plaintiff was
         *prima facie* proof of the damages to which it was entitled.

Error to superior court of Grand Rapids; Dunham
(Major L.), J. Submitted January 18, 1922. (Dock-
et No. 100.) Decided July 20, 1922.

. Assumpsit by the city of Grand Rapids against Max
Crocker and another for the amount of an award
against plaintiff under the workmen's compensation
act. Judgment for plaintiff. Defendants bring error.
Affirmed.

*Smedley, Linsey & Shivel,* for appellants.

*Ganson Taggart,* for appellee.

*Beaumont, Smith & Harris* (*Hal H. Smith* and
*Albert E. Meder,* of counsel), *amici curiæ.*

SHARPE, J. Herman F. Brandt, while employed as
a fireman in the plaintiff city, was killed on Novem-
ber 24, 1918, by a collision between a "squad wagon"
in which he was riding to a fire and an automobile
owned by the defendants and driven by one of them,
the other being a passenger therein. The collision
occurred at or near the intersection of Cherry street
and LaGrave avenue. Sarah E. Brandt, widow of
deceased, presented a claim for compensation to the
city under the provisions of the workmen's compensa-
tion act (2 Comp. Laws 1915, § 5423 *et seq.*), to
which the deceased and the city were both subject.
An agreement for compensation whereby the applicant
was to receive $10 per week for 300 weeks was exe-
cuted on February 4, 1919, and approved on the follow-

ing day by the industrial accident board.    On June 24, 1919, Mrs. Brandt, as administratrix of the estate of her deceased husband, began suit in the superior court of Grand Rapids against the defendants herein, claiming damages to his estate by reason of his death, alleged to be due to the negligence of the defendants. The defendants with their plea interposed several special defenses, among them that the agreement for compensation entered into with the city barred the right of recovery.    The trial of that suit resulted in a verdict and judgment in favor of the plaintiff on January 15, 1920, for $1,210.69, the court having instructed the jury that the sum which plaintiff would receive under the compensation agreement must be deducted by them from the damages as proven and determined.    On April 9, 1920, the city of Grand Rapids, plaintiff herein, began suit against the defendants to recover the amount paid by it to the widow under the compensation agreement.    It had verdict and judgment for $1,067.14, being the amount paid by it under the compensation agreement up to the time of the trial.

1. Plaintiff's right to recover is based on the provisions in section 15 of part 3 of the act (2 Comp. Laws 1915, § 5468), which read as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

In determining the rights of an employer under this section, two questions must be answered:

(*a*) Does the provision for election apply to the dependents of a deceased employee?

(*b*) If not, is there any right of recovery over on the part of the employer where compensation is paid to dependents by reason of the death of the employee?

(*a*) As to the first, the opinions of this court in *Detloff* v. *Hammond, Standish & Co.*, 195 Mich. 117, and *Brabon* v. *Gladwin Light & Power Co.*, 201 Mich. 697, assume, if they do not decide, that the answer should be in the affirmative, while the later cases of *Vereeke* v. *City of Grand Rapids*, 203 Mich. 85, and *Naert* v. *Telegraph Co.*, 206 Mich. 68, hold otherwise. As the holding in these later cases must result, in some instances, in permitting a double recovery against the third party wrongdoer or prevent recovery over on the part of the employer, it seemed our duty to further consider these questions. To the end that all parties interested might, so far as they desired, be heard, we invited briefs on the suggested questions. A number have been submitted by attorneys whose practice, as indicated by the decisions of this court, embraces the prosecution or defense of claims arising under the act. These have been most helpful to us, and we desire to express our appreciation of the service thus rendered.

There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty. If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given

to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.

"No rule is better settled than, in construing a statute, effect must be given to every part of it. One part must not be so construed as to render another part nugatory, or of no effect. The same rule applies to words in construing a sentence." *People* v. *Burns,* 5 Mich. 114.

See, also, *Whipple* v. *Saginaw Circuit Judge,* 26 Mich. 342. The application of such rules and the reasoning on which they are founded are well stated in the following quotations:

"Effect to be Given to True Intent of Act. Modification of Language.—Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it, which modifies the meaning of the words, and even the structure of the sentence. This is done, sometimes, by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction that the legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give the true intention. The ascertainment of the latter is the cardinal rule, or rather the end and object, of all construction; and where the real design of the legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such a construction as will carry that design into effect, even though, in so doing, the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the

letter." Endlich on the Interpretation of Statutes, § 295.

"Words Expanded or Limited to Accord with Intent. —It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, a key is found to all its intricacies;— general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention. * * *

"Not only may the meaning of words be restricted by the subject-matter of an act or to avoid repugnance with other parts, but for like reasons they may be expanded. The application of the words of a single provision may be enlarged or restrained to bring the operation of the act within the intention of the legislature, when violence will not be done by such interpretation to the language of the statute. The propriety and necessity of thus construing words are most obvious and imperative when the purpose is to harmonize one part of an act with another in accord with its general intent. The statute itself furnishes the best means of its own exposition; and if the intent of the act can be clearly ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail without resorting to other aids for construction. The intention of an act will prevail over the literal sense of its terms. * * * Where general and particular words occur, having reference to the subject of the act or some feature of it, the intention is the guide as deduced from a consideration of all its parts and the system of which it forms a part." 2 Lewis' Sutherland, Statutory Construction (2d Ed.), §§ 347, 348.

See, also, opinion of Mr. Justice Brooke, in *Attorney General* v. *Railway*, 210 Mich. 227, 254, and cases cited.

Let us apply these rules to the section under consideration. The word "employee" as here used is not of doubtful meaning. The section, consisting of but one sentence, is complete in itself, and the language employed needs no interpretation. But we find that the word "employee" is used in many other sections, and it is incumbent on us to ascertain whether it was the intention of the legislature to here use it in any other sense than that indicated by the well-understood meaning of the word.

The title of the act is fairly expressive of its object and purpose:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, *providing compensation for the accidental injury to or death of employees* and methods for the payment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and *restricting the right to compensation or damages in such cases to such as are provided by this act.*"

It indicates a design on the part of the legislature to provide "compensation for the accidental injury to or death of employees" and to restrict "the right to compensation or damages in such cases to such as are provided by this act." The several sections deal with employees on the one hand and employers on the other. The intent was to provide a fair remuneration to the employee for an accidental injury sustained by him while so employed, to simplify so far as possible the manner of determining the liability of the employer to pay compensation, and to fix as definitely as possible the amount to be paid and the method of payment. The purpose of section 5468 (§ 15) is apparent. The law compels the employer to pay compensation, even though in no way to blame

for the accident which caused the injury; where it was, in fact, caused by the wrongful and negligent act of another. In such cases, this section seeks to provide for reimbursement on the part of the employer from the person legally liable to pay damages for the injury due to such wrongful or negligent act. It permits the employee to elect, to choose, whether he will seek to recover against the wrongdoer, a remedy frequently dependent upon the result of one or more trials in an action at law and subject to much delay, or make claim for compensation for his injury under the more speedy and certain provisions of the act. He cannot, however, pursue both remedies. The election as to one is a bar to recovery under the other. A double recovery for a single injury is thereby prevented. Should compensation be claimed and paid, the employer may enforce for his benefit the liability of the wrongdoer. More briefly stated, the section makes the employer liable in cases where no liability at law theretofore existed, prevents a double recovery by the employee, and permits a recovery over against the wrongdoer for compensation paid by the employer.

The word "dependents" is not used in this section. Is the word "employee" used in such a sense as indicates an intent to designate all those by whom compensation may be claimed? This statute was enacted as a whole. It has a definite purpose, apparent from its title and its several provisions. It consists of 73 sections, grouped into 6 parts. All the sections and parts must, if possible, be made to harmonize with each other and thus constitute a complete and perfect act, consistent with its scope and object. To this end, each section and each part must be construed in connection with every other section and part. The meaning of a word in one section may be made plain

by the sense in which the same word is used in other sections.

"Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout."   36 Cyc. p. 1132.

We find the word "employee" used in the following sections:

"If the employee is injured by reason of his intentional and wilful misconduct, he shall not receive compensation under the provisions of this act.

"No agreement by an employee to waive his rights to compensation under this act shall be valid.

"If the employer, or the insurance company carrying such risk, or commissioner of insurance, as the case may be, and the injured employee reach an agreement in regard to compensation under this act, a memorandum of such agreement shall be filed with the industrial accident board, and, if approved by it, shall be deemed final and binding upon the parties thereto.   Such agreements shall be approved by said board only when the terms conform to the provisions of this act.

"If the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be, and the employee fail to reach an agreement in regard to compensation under this act, either party may notify the industrial accident board, who shall thereupon call for the formation of a committee of arbitration.   The committee of arbitration shall consist of three members, one of whom shall be a member of the industrial accident board, and shall act as chairman.   The other two members shall be named respectively by the two parties."   2 Comp. Laws 1915, §§ 5432, 5450, 5458, 5459.

Without quoting at length, it will be seen that section 5467 provides for a review of weekly payments by "the employee," section 5473 requires the employer to furnish satisfactory proof of his financial ability to make payments of amounts awarded to "his employees," and section 5483 provides for settlement

of controversies between the commissioner of insurance and "any employee claiming compensation." It is apparent that the word "employee" was intended to be used in these sections in a somewhat collective sense; that it was intended to embrace the dependents of the employee as well as the employee himself. Unless so interpreted, the act contains no provision for enforcing the rights of dependents in many particulars, and one of its purposes will be thwarted.

In the recent case of *Fortin* v. *Beaver Coal Co.*, 217 Mich. 508, we held that under section 5432, above quoted, the intentional and wilful misconduct of a deceased employee barred recovery on the part of his dependents though only the employee is mentioned therein. The word "employee" was used in this sense by the commission which drafted the act in its report to the governor. It concludes:

"* * * We present it for consideration in the firm belief that it represents to the full extent of present experience a broad and comprehensive plan for the adjustment of such controversies between employers and *employees*."

It is urged that an action by an administrator is not for the benefit of the dependents of the injured employee, but for the benefit of his estate, and that this act does not, in express terms, repeal the survival or death act or provide that recovery shall not be had by an administrator thereunder. It is a sufficient answer to say that the provisions of the workmen's compensation act are in effect read into the contract of employment made between the employer and employee. *Wood* v. *Vroman*, 215 Mich. 449, 463, and cases cited. Under its provisions, duties and liabilities are imposed on the employer theretofore unknown to the law. In the respect claimed, the act takes from the personal representatives of the employee a right of action theretofore existing. The law imposes ad-

ditional duties and responsibilities on the employer
and may for his benefit require a surrender of rights
on the part of the employee.    Both are matters per-
taining to the contract and binding alike on the per-
sonal representatives of the parties.    It was within
the power of the legislature to provide that the right
of recovery by the personal representatives of a de-
ceased workman might be restricted by the terms of
his contract of employment in order to secure to his
employer a return of compensation paid, for which,
but for the contract, of which the statute forms a
part, no legal liability on his part existed.    The
statute is a remedial one, enacted primarily for the
benefit of the man who works in the pursuits subject
to its provisions.

"There is a strong presumption that a legislature
understands and correctly appreciates the needs of its
own people, that its laws are directed to problems
made manifest by experience and that its discrimina-
tions are based upon adequate grounds."    *Middleton*
v. *Texas Power & Light Co.*, 249 U. S. 152, 157 (39
Sup. Ct. 227).

More particular reference should perhaps be made
to the cases above cited.    In the *Detloff Case,* the de-
fendant urged that an election had been made by
reason of an agreement entered into between the ad-
ministratrix and the employer.    It was held that such
agreement was invalid.    Mr. Justice FELLOWS em-
phasizes the effect of the holding in a concurring
opinion in which he said:

"If it could be said that the contract is valid and
enforceable, it amounts to an election to proceed
against the employer."

In the *Brabon Case,* the defendant claimed that the
plaintiff as administratrix of the estate of a deceased
employee had elected to receive compensation by ac-

cepting a payment of money from his employer. No formal claim for compensation had been made. The majority of the court, speaking through Chief Justice OSTRANDER, said:

"In the instant case, the alleged responsible third person pleads, in effect, that the representative of the employee had *proceeded* against the employer for compensation under the act before bringing this suit, and, as she cannot proceed against both the employer and the defendant, the suit must abate. And this raises the precise question to be determined, namely, did she *proceed* against the employer for compensation, within the meaning of the statute?"

Mr. Justice FELLOWS, in a dissenting opinion, said:

"In the instant case the testimony tends to show that the plaintiff had been paid, and had received as compensation under the act three weekly payments from the employer (who had been reimbursed by the insurance company), and several other payments from the insurance company. This, in my judgment, was an election under the act; she had 'proceeded' against the employer within the contemplation of section 15, part 3 (2 Comp. Laws 1915, § 5468)."

In both of these cases it was assumed, if not decided, that section 5468 provides for an election in case of the death of an employee.

In the *Vereeke* and *Naert Cases*, it was held that an administrator of a deceased employee's estate need not elect under section 5468, but may recover compensation under the act and also damages against the wrongdoer. The holding in these cases was placed squarely on the interpretation of the word "employee" in that section. Neither the *Detloff* nor the *Brabon Case* was referred to.

We feel constrained to hold that the word "employee" in this section includes his dependents; that in case of the death of the employee the dependents

may elect to proceed against the wrongdoer or to take compensation under the act; that an election to take under the act is a bar to an action brought by an administrator against the wrongdoer under either the survival or death act, and when such election is made the employer is subrogated to the rights of such dependents and may recover from such wrongdoer to the extent of the liability imposed on him under the act.

(*b*) The answer to this question is foreshadowed by what has been already said.   This section contains the only provision in the act in which the right of recovery over is given.   It consists of but one sentence and in no way grants a right of recovery to the employer except when the election is made by the employee.   We have held that recovery under it may be had by the employer when he has paid compensation to a dependent.   *Golden & Boten Transfer Co. v. Brown & Sehler Co.*, 209 Mich. 503.   These considerations strengthen our conviction that the word "employee" should be interpreted as already expressed.

2. Is the judgment recovered by Mrs. Brandt as administratrix a bar to plaintiff's right of recovery?   It seems a sufficient answer to this question to say that the compensation agreement was entered into and approved before that action was begun.   The plaintiff was not a party to that suit and had made payments under the agreement before it was instituted.   Its right to bring suit against the defendants became fixed when the agreement was entered into and approved, no suit at that time having been begun by the administratrix.

3. The defendants sought to show that the driver of the fire truck was negligent and that his negligence contributed to the injury and resultant death of the deceased.   They had the right to interpose any defense which would have been available had the suit been

brought by the administratrix of Brandt's estate. It cannot be said that the negligence of the driver is imputable to the deceased. In *McKernan* v. *Railway Co.*, 138 Mich. 519 (68 L. R. A. 347), it was held (quoting from the syllabus) :

"The negligence of the driver of a fire engine was not imputable to the engineer, who, in the performance of his duty, was riding on the rear end of the engine when it collided with a street car."

4. Error is assigned on the court's refusal to instruct the jury as requested by defendants. We have examined the charge as given and find that the matter contained in the requests was, in substance, included therein. It will serve no useful purpose to quote the requests and the charge to demonstrate this fact.

5. A witness, Helene Rochon, who saw the collision from a room she was occupying near the corner of the two streets, was permitted, over objection, to testify that defendants' car was being driven "ever so much faster" than cars were "commonly" driven on that street. It was error to admit this testimony. As was said in *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537, 540 (31 Am. Rep. 321) :

"Opinions on relative speed, without some standard of rapidity, are of no value by themselves."

Three witnesses for plaintiff testified that the car was moving from 25 to 35 miles per hour. The defendants themselves testified it was going about 11 or 12 miles. One of defendants' witnesses testified that it was "going moderately, compared with other cars that go by there;" that it did not appear to her to be going as fast as 25 miles per hour. The trial court properly instructed the jury:

"As I have already told you, one of the statutory duties of these defendants was to approach the intersection of Cherry street with LaGrave avenue with

their car under control and to operate it at such speed as was reasonable and proper."

We have given this question careful consideration and, in view of the entire record, are persuaded that the error in admitting this testimony does not justify a reversal of the case.

6: The plaintiff was permitted to recover the amount paid by it up to the time of the trial. The defendants insist that recovery should have been limited to the amount paid at the time suit was begun. When the defendants' liability was established, the amount paid by plaintiff was *prima facie* proof of the damages to which it was entitled. *Grand Rapids Lumber Co.* v. *Blair,* 190 Mich. 518; *Albrecht Co.* v. *Iron Works,* 200 Mich. 109. In the latter case, there was a remand to the trial court to ascertain the amount paid by plaintiff. This, we assume, was intended to include all sums at that time paid under the compensation agreement. There can be no injustice to defendants in so holding on this record.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.