UTLEY *v.* TAYLOR & GASKIN, INC.

1. WORKMEN'S COMPENSATION—ELECTION OF INJURED EMPLOYEE—DIRECT PROCEEDING AGAINST THIRD-PARTY TORTFEASOR.
     An employee who suffers a compensable injury under circumstances creating a legal liability in some person other than his employer has an option of proceeding at law for damages or against the employer for workmen's compensation but not against both (2 Comp. Laws 1929, § 8454).

Definition of independent contractor, see 2 Restatement, Torts, § 409, comment a; duty of independent contractor to take precautions against dangerous conditions, see § 413.

2. Same—Employer's Action Against Third-Party Tortfeasor for Insurer.

After an injured employee has elected to receive, and has been paid, workmen's compensation, the employer may institute action for benefit of the workmen's compensation insurer to enforce the injured employee's claim for damages against the third-party tortfeasor (2 Comp. Laws 1929, § 8454).

3. Master and Servant—Independent Contractor—Definition.

An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.

4. Same—Independent Contractor—Steel Construction Work Subcontractor—Inspection—Union Labor.

Defendant subcontractor for steel construction work in a building *held*, an independent contractor as a matter of law where plain and unambiguous subcontract simply called upon him to "furnish and erect structural steel * * * according to plans and specifications * * * and as per subcontract" notwithstanding reservation in general contractor of right to inspect and to reject materials and stipulation that union labor should be used.

5. Same—General Contractor's Liability for Negligence of Independent Contractor—Unusually Dangerous Work.

The rule that one who has contracted with a competent person to do a work within the scope of his independent employment is not answerable for the negligent acts of such contractor or of his agents in the performance of the contract is subject to the exception that immunity from responsibility may not be claimed when the work to be done is of such character that it necessarily subjects third persons to unusual danger.

6. Workmen's Compensation—Action for Benefit of Insurer—Imputed Negligence—Instructions.

In action by an employer, a general contractor, for the benefit of his workmen's compensation insurer, to enforce statutory right arising from compensated claim of an employee injured by defendant tortfeasor, an independent subcontractor, the plaintiff stands in the shoes of his injured employee and since the statute makes no exception for injuries resulting by reason of the inherently or intrinsically dangerous character of the

work involved, the negligence of defendant would not be imputed to plaintiff and bar recovery, hence instruction to the contrary to the jury constituted reversible error (2 Comp. Laws 1929, § 8454).

7. SAME—SUBROGATION—CONTRIBUTORY NEGLIGENCE OF EMPLOYER NOT A DEFENSE—INSTRUCTIONS.

In general contractor's statutory subrogation action for benefit of his workmen's compensation insurer, against independent subcontractor which had contracted to furnish and erect steel-work in a building and negligently injured plaintiff's bricklayer, to recover payments made for workmen's compensation, instruction that permitted defendant to escape liability by showing contributory negligence on part of the employer in failing to furnish his employee a safe place in which to work or to inspect materials furnished was reversible error as statute, which imposes liability upon employer irrespective of fault and which places the employer in the employee's shoes, makes no exception in case of plaintiff's contributory negligence (2 Comp. Laws 1929, § 8454).

8. SAME—CONTRIBUTORY NEGLIGENCE OF INJURED EMPLOYEE—QUESTION OF FACT.

In general contractor's action for benefit of his workmen's compensation insurer against independent subcontractor, engaged to furnish and erect steelwork, to recover compensated claim for injuries to bricklayer who was injured while working in an adjoining bay or room in the construction project when steel beam fell upon him, testimony presented question of fact for jury as to bricklayer's contributory negligence (2 Comp. Laws 1929, § 8454).

Appeal from Wayne; Richter (Theodore J.), J. Submitted April 7, 1943. (Docket No. 4, Calendar No. 41,989.) Decided June 7, 1943. Rehearing denied September 7, 1943.

Case by Jerome A. Utley, for the use and benefit of Travelers Insurance Company, a Connecticut corporation, against Taylor & Gaskin, Inc., a Michigan corporation, to recover the amount of workmen's compensation paid Jerome Moore. Verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Vandeveer & Haggerty,* for plaintiff.

*Ernest P. LaJoie,* for defendant.

STARR, J. Plaintiff Utley was the general contractor for the construction of a building in the Franklin Street Settlement project in the city of Detroit. Defendant was the subcontractor for the steel construction work in such building. On October 12, 1937, one Jerome Moore, a bricklayer employed by plaintiff, was severely injured by a steel beam which fell and struck him. Plaintiff's insurance carrier, the Travelers Insurance Company, paid employee Moore workmen's compensation and his medical, hospital, and nursing expenses in the total amount of $2,809.50.

Plaintiff brought the present suit under the workmen's compensation act (2 Comp. Laws 1929, § 8454 [Stat. Ann. § 17.189]), for the use and benefit of his insurer, to recover the amount it had paid as a result of employee Moore's injuries, alleging that such injuries were caused by defendant's negligence. Defendant answered, denying the charge of negligence and alleging, among other things, that plaintiff and his employee were guilty of contributory negligence.

The trial court reserved decision on defendant's motions for directed verdict, and the case was submitted to the jury. The jury returned a verdict of no cause of action, judgment for defendant was entered, and plaintiff's motion for a new trial was denied. He appeals, contending that the trial court erred in the admission of evidence, in its charges to the jury, and in denying motion for a new trial.

The subcontract in question was evidenced only by plaintiff's so-called purchase order to defendant, which provided in part:

"Please enter my order for the following material to be delivered to Franklin Settlement Bldg.:

"Quantity      Name of Article      Price & Terms
"Furnish and erect structural steel including lintels for exterior wall openings and garage; of new Franklin Settlement Bldg. job according to plans and specifications dated Aug. 4, 1937, and as per subcontract for the sum of..............21,472.00
"A. F. of L. labor to be employed in field.   *   *   *
        "(Stamped) Received Aug. 24, 1937.
                "J. A. UTLEY,
                "By W. J. STARK,
                "H. O. W.
            "Conditions.
"1.   Materials furnished on this order are subject to my inspection and approval and if rejected will be held at your risk and returnable at your expense."

In pursuance of such subcontract defendant prepared designs and specifications of the steel materials to be used in the building construction. Such designs and specifications were approved by plaintiff. A part of the steel was fabricated by the manufacturers thereof and a part in defendant's shops. Included in such steel materials were certain parts referred to in the record as "saddles" which fitted over large horizontal I-beams and into which the ends of connecting junior I-beams were to be placed. There were so-called "lugs or ears" on each saddle, which, when bent around the top flange of the large I-beam, were intended to hold the saddle in place. The saddles, which were a nationally advertised product and made for junior beam construction work, were purchased by defendant from the manufacturer. At the time of the accident defendant had completed about three-quarters of the steel construction work, and was in the process of placing the junior beams in the saddles. This part

of the construction work was about 25 feet above the ground floor.

The walls of the building had not yet been erected, and the rooms on the ground floor, which were indicated only by the structural steel framework, were referred to as "bays." At the time of the accident, as directed by his foreman, plaintiff's employee was laying brick in the bay adjoining that in which defendant was erecting the junior I-beams. A steel worker employed by defendant described the accident as follows:

"Just before the accident happened, I was connecting iron. *  *  *. We were putting in junior beams on the east side of the bay. Those junior beams were fastened to saddles or hangers *  *  * attached to our I-beams. *  *  * I had engaged in the work of fitting these saddles onto the flange of the I-beams. When I went up there I laid a run of saddles over that beam, spaced them out. *  *  * I did something to fasten those saddles to the flanges. I had a hammer and was knocking down the lugs or ears. They were too short; it permitted them (saddles) to move, they would rock in sort of an up and down motion over the beam. I noticed that before this accident happened. I spoke to Mr. McNeil (defendant's foreman) about it. I told him the lugs were too short. He said, 'We will try one in and see how they work.' Then I started in to do these five or six that I have indicated there. They were too short—the lugs. At the time of the accident, when the beam fell out, we had raised about five (junior I-beams), and the wind started to blow, and it started to rock our lugs on there back and forth. *  *  * I called McNeil up and showed him how those were rocking. Next, I had a bar, and he had a hammer, and we started, if we could make them hold. About that time there was another strong wind come and started a vibration and the junior beam went out of the saddle. *  *  *

While we were doing this hammering, and while this wind was blowing, and while the saddles were in motion, this (junior) I-beam fell out and went down to the floor."

It appears that the steel beam struck the cement floor at an angle and bounced or fell into the adjoining bay where plaintiff's employee was laying brick and struck him on the head. When struck, plaintiff's employee was working at a point variously estimated as from 5 to 18 feet from where the beam first struck the floor. Defendant's foreman testified, in substance, that he had seen a bricklayer working in the adjoining bay "10 or 15 minutes before the accident;" that he had warned him of the danger, but that he could not identify plaintiff's injured employee as the man whom he had warned. He testified in part:

"I * * * had seen this man working (laying brick) in the bay that was adjoining. I told him to get out from under; because it wasn't a safe place for him to be. * * *

"I didn't pay no more attention to him after I told him to get out of there, because he went away, and then he come back. * * *

"*Q.* Can you identify him as being the same man who was injured later?

"*A.* No, sir, I could not. * * *

"I don't know whether it was the same man or not."

Plaintiff's employee Moore denied that he was warned by defendant's foreman or that he received any warning whatever. It appears that prior to the accident the saddles had not been welded to the large I-beams, but that after the accident defendant had them welded. Its president testified that the welding "was an added precaution. * * * It would avoid movement in the saddles."

At the time of the accident no steel construction work was being done in the bay in which plaintiff's employee was laying brick. A safety engineer employed by the Travelers Insurance Company testified, in effect, that it would "normally" be considered "reasonably safe" for a person to work in the bay adjoining that in which steel construction work was being done. There was testimony that in the erection of buildings it is the custom and practice for masonry, carpentry, plumbing, electrical, and other trades work to be carried on at the same time that the steel construction work is being done. However, plaintiff's superintendent stated that steel erection is dangerous "to anybody in the vicinity of . that work."

The statute under which the present suit was brought (2 Comp. Laws 1929, § 8454) provides:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

Under such statute plaintiff's employee Moore, at his option, could have proceeded against defendant to recover damages for his injuries or against plaintiff as his employer for workmen's compensation, but not against both plaintiff and defendant. He elected to take workmen's compensation, which was paid to him by plaintiff's insurance carrier, the Travelers Insurance Company. Such compensation

benefits having been paid, plaintiff could institute the present suit for the benefit of the Travelers Company and enforce his injured employee's claim for damages against defendant.

Plaintiff contends that the trial court committed reversible error in instructing the jury as follows:

"They must prove to you that they, the plaintiff, and their employee, Jerry Moore, were free from contributory negligence.    *    *    *

"I have told you that a general contractor cannot evade liability to his workmen by attempting to delegate his duties of protection to an independent contractor.

"Therefore, so far as the Utley Company is concerned, it had the primary duty of protecting its own workman, Jerome Moore, and if it did not protect him, and if he was injured through some fault of the Taylor & Gaskin Company, then the Utley Company cannot prevail in this case against the Taylor & Gaskin Company for the simple reason that any negligence which may have been committed by the employees of the Taylor & Gaskin Company (defendant) became and was the negligence of the Utley Company (plaintiff), because it was the duty of the Utley Company in such a situation to see to it that the work of Taylor & Gaskin Company was done in such a way that it would not injure any other employee of the Utley Company."

The above instruction by the trial court is based in part upon the erroneous premise that the negligence of defendant was imputable to plaintiff and barred his recovery in the present case.

The trial court did not determine whether or not defendant was an independent contractor. This is important, because the above-quoted statute provides for the enforcement, by the employer for the benefit of his insurer, of the employee's claim for damages against "some person other than the em-

ployer." As the subcontract between the parties, hereinbefore quoted, is plain and unambiguous, whether or not defendant was an independent contractor is a question of law. *Wight* v. *H. G. Christman Co.*, 244 Mich. 208; *Collias* v. *Detroit & Northern Michigan Building & Loan Ass'n*, 220 Mich. 207. The test for determining whether or not the relationship of independent contractor existed was stated in *Zoltowski* v. *Ternes Coal & Lumber Co.*, 214 Mich. 231, as follows:

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results." 26 Cyc. p. 1546.

Applying the above test to the facts shown by the record, we conclude, as a matter of law, that defendant was an independent contractor. Plaintiff's reservation in the subcontract, of the right to inspect and to reject materials, did not give him such degree of control as to change defendant's status as an independent contractor. *Odle* v. *Charcoal Iron Co. of America*, 217 Mich. 469; *Carleton* v. *Foundry & Machine Products Co.*, 199 Mich. 148 (19 A. L. R. 1141); *Bacon* v. *Candler*, 181 Mich. 372. Nor did the contract provision regarding the use of union labor affect such status.

Defendant contends that, although it is held to be an independent contractor, it is not liable to plaintiff in the present case because, steel construction work being inherently or intrinsically dangerous, the exception to the independent contractor rule is applicable. This exception was stated in *Olah* v. *Katz,* 234 Mich. 112, 116, as follows:

"The general rule relied on by defendant that one who has contracted with a competent person to do a work within the scope of his independent employment is not answerable for the negligent acts of such contractor, or of his servants or agents, in the performance of the contract, is subject to the exception that immunity from responsibility may not be claimed when the work to be done is of such a character that it necessarily subjects third persons to unusual danger."

In other words, defendant claims that, steel construction work being inherently or intrinsically dangerous, the exception to the independent contractor rule is applicable; that under such rule plaintiff is liable for the negligence of defendant as an independent contractor; and that such negligence, imputed to plaintiff, bars his recovery. Defendant relies upon *Wight* v. *H. G. Christman Co., supra,* and *Watkins* v. *Gabriel Steel Co.,* 268 Mich. 264, in which the exception to the independent contractor rule was applied to the factual situations there presented. Plaintiff claims that such authorities have no application to the present case, which was instituted under the above-quoted provision of the workmen's compensation act.

In the *Christman Company Case* plaintiffs owned a dwelling house in Lansing which was insured against fire. Defendant Christman Company contracted to construct a building near such house and engaged one John Gohr to do the excavating. Plaintiffs claimed that sparks from a steam shovel op-

erated by Gohr in the excavating work set fire to their house. The fire damage was paid by the insurance company which was subrogated to the rights of plaintiff, and suit was instituted against both the Christman Company and its subcontractor Gohr. In reversing a judgment for defendants we said, p. 215:

"The Christman Company was principal contractor for the erection of the building on the premises in question, and cannot evade liability by the mere fact it hired Gohr to do excavating with a steam shovel. It was bound to see that the excavating, which as a part of its contract it was bound to do, was not done by a subcontractor in a negligent manner. * * *

"In *Inglis* v. *Millersburg Driving Ass'n,* 169 Mich. 311 (Ann. Cas. 1913 D, 1174), the exception to the general rule is pointed out. The language of *Covington & Cincinnati Bridge Co.* v. *Steinbrock & Patrick,* 61 Ohio St. 215 (55 N. E. 618, 76 Am. St. Rep. 375), was expressly approved, and it is said that 'A duty is imposed upon the employer, in doing work necessarily involving danger to others unless great care is used, to make such provision against negligence as may be commensurate with the obvious danger. It is this duty that cannot be delegated to another so as to avoid liability for its neglect.'" (See cases cited.)

In *Watkins* v. *Gabriel Steel Co., supra,* the defendant contracted with the property owner for the furnishing and erection of steel joists in the construction of a building. It subcontracted the steel erection work to the Peters Company. Plaintiff had the contract for the masonry and, in connection with such work, placed planks upon the steel joists which the Peters Company had installed. Such joists, which apparently had not been properly

attached, gave way, and plaintiff, who was standing on the planking, fell and was injured. He began suit against defendant Gabriel Steel Company, and in affirming a judgment for plaintiff we said, p. 267:

"When the joists were placed in position for putting the planking upon them, the plaintiff and his workmen had the right to assume that they were fastened in such a manner as would afford reasonable security to them in the furtherance of their work on the building and if they were not, as found by the court, the neglect to do so necessarily subjected them to an unusual danger. And as was said in the former opinion, 'If his (plaintiff's) injury was due to such neglect, defendant may not be relieved from the consequences thereof by the fact that the work was being done by Peters as an independent contractor.' "

The case had previously been before this court in *Watkins* v. *Gabriel Steel Co.,* 260 Mich. 692, and, although reversed on other grounds, the conclusions therein stated were held to be the law of the case. We there said:

"It clearly appears that Peters was an independent contractor, and that he was competent to perform the work undertaken by him. While the general rule is that a contractor is exempt from liability caused by the negligence of an independent contractor or his servants, it is subject to the exception that such liability cannot be evaded, unless proper precautions are taken, when the work to be done is *inherently or intrinsically dangerous.* 39 C. J. pp. 1331, 1332." (Citing *Olah* v. *Katz, supra; Wight* v. *H. G. Christman Co., supra.*)

In the above-discussed cases, the exception to the independent contractor rule was clearly invoked to prevent the general contractor from escaping liability to third persons injured in connection with

"inherently dangerous" work, by the defense that such work was being done by a subcontractor. In such cases the plaintiffs were not employees of the general contractor and, therefore, the provision of the workmen's compensation act under which the present suit is brought was not involved or construed. Such cases are readily distinguishable from the case at hand, in which the statute expressly gives plaintiff as employer the right to enforce, for the benefit of his insurer, the claim of his injured employee against defendant. In other words, plaintiff stands in the shoes of his injured employee. The statute makes no exception for injuries resulting by reason of the inherently or intrinsically dangerous character of the work involved. We are convinced that the so-called exception to the independent contractor rule, applied in the *Christman Company* and *Gabriel Steel Company Cases* above discussed, is not applicable to the present case. Therefore, the negligence of defendant was not imputable to plaintiff and would not bar his recovery. The trial court's instruction to the contrary, hereinbefore quoted, was erroneous and constituted reversible error.

The trial court's instruction to the jury further stated, in effect, that it was plaintiff's duty to provide his employee with a safe place to work and to have defendant's structural steel work "done in such a way" that his employee would not be injured, and that failure to do this constituted negligence barring his recovery. Such instruction was apparently based upon an erroneous conception of the provision of the workmen's compensation act under which the present suit was begun. Such provision makes no exception as to an employee's injuries in connection with which the employer might

be guilty of contributory negligence. To read such an exception into the statute would clearly destroy its intended purpose, which was to provide a method whereby the employer could reimburse himself or his insurer for workmen's compensation benefits paid to an injured employee, where such injury resulted from the negligence of some other person. Under such statute the contributory negligence of plaintiff, as employer, would not have barred his injured employee from maintaining an action directly against defendant for his injuries resulting from its negligence. Defendant could not have pleaded the contributory negligence of plaintiff, as employer, in a suit instituted against it by the injured employee. The test of the liability of defendant to plaintiff is whether or not the employee could have held defendant liable for his injuries. The statute, as hereinbefore stated, placed plaintiff in the shoes of his injured employee. In *Naert* v. *Western Union Telegraph Co.*, 206 Mich. 68, we said:

"Section 15 of part 3 (2 Comp. Laws 1915, § 5468 [2 Comp. Laws 1929, § 8454]) clothes the employer with the absolute right to recover such payments as it is obliged to make from the third person legally liable for the injury."

And in *Michigan Employers Casualty Co.* v. *Doucette*, 218 Mich. 363, we said:

"This section confers a right of recovery on the employer. It provides that he 'may enforce for his benefit or for that of the insurance company carrying such risk' the liability of the wrongdoer to the employee. No assignment is necessary. The statute confers the right by way of subrogation. Such right, however, is conferred upon the employer only, though it may be exercised for his own benefit or for that of the insurance company carrying his risk."

See, also, *City of Grand Rapids* v. *Crocker,* 219 Mich. 178.

Our attention has not been called to any decision in this State directly determining the question as to whether or not an employer's contributory negligence would defeat an action instituted by him under the provision hereinbefore quoted of the workmen's compensation act. However, somewhat similar statutes have been considered and construed in other jurisdictions. In *Otis Elevator Co.* v. *Miller & Paine,* 153 C. C. A. 302 (240 Fed. 376), Miller & Paine began suit to recover for workmen's compensation payments they had made to an employee alleged to have been injured by the negligence of the elevator company. The company contended that Miller & Paine could not recover, because as employers they were guilty of contributory negligence. The Nebraska statute (Rev. Stat. Neb. 1913, § 3659) under which such suit was begun provided:

"Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover."

In affirming a judgment for Miller & Paine the court said:

"To construe section 109 (Nebraska workmen's compensation act [Rev. Stat. Neb. 1913, § 3659]) as not permitting Miller & Paine (employer) to prosecute an action for the benefit of itself and the dependents of Pettengill (employee), if the negligence of Miller & Paine concurred with that of the elevator company in causing his death, would destroy the

section. The object of the section, as clearly appears from its language, was to permit the employer to reimburse himself by an action against the party whose negligence caused the death and also to allow the dependents of the deceased employee to recover a sum over and above the amount for which the employer was absolutely liable, regardless of negligence, if the evidence should permit such recovery.

"The action brought by Miller & Paine against the elevator company under its right of subrogation must be treated, so far as the right to recover is concerned, just as if the action had been brought by the administrator of the estate of Pettengill. To decide that the concurring negligence of Miller & Paine could defeat such an action would not only permit one wrongdoer to plead the fault of a joint wrongdoer in defense, but would, as heretofore said, *destroy the right of subrogation granted by the statute.* The liability to compensate an employee, imposed by law upon the employer regardless of negligence, is in lieu of his liability for all other reasons."

See, also, *Graham* v. *City of Lincoln,* 106 Neb. 305 (183 N. W. 569).

In the case of *Fidelity & Casualty Co.* v. *Cedar Valley Electric Co.,* 187 Iowa, 1014 (174 N. W. 709), an employee of a telephone company was killed by coming in contact with a high-tension wire of defendant electric company. The telephone company's insurer paid the compensation award and brought suit against the electric company to recover such payments. The electric company interposed the defense of contributory negligence on the part of the telephone company as employer. In holding that such defense was not available to defendant, the court said, p. 1021:

"There is nothing, express or implied, in section 2477–m6 [1913 Supplement, Code of Iowa], from which the conclusion can be drawn that the payment

of compensation by the employer, whose act, jointly with that of another, produced the injuries, shall operate as a bar against the right of an employee, or the party paying the compensation and entitled to be subrogated to his rights, to maintain an action against the person other than the employer, although a joint tortfeasor, for damages.''

Under the clearly erroneous instruction of the trial court in the present case, defendant would escape liability for its negligence by showing the contributory negligence of plaintiff as the employer of the injured person. As the statute under which this suit was brought gives plaintiff the right to enforce his injured employee's claim for damages against defendant and makes no exception in case of plaintiff's contributory negligence, we are convinced that the court's instruction constituted reversible error.

See, also, *Milosevich* v. *Railway Co.*, 68 Cal. App. 662 (230 Pac. 15); *General Box Co.* v. *Missouri Utilities Co.*, 331 Mo. 845 (55 S. W. [2d] 442).

Plaintiff further contends that the trial court erred in giving the following instruction:

''I have told you that the Utley Company reserved the right to inspect and reject materials. The right to inspect and reject materials assumes the corresponding obligation to do so, and whether or not the Utley Company inspected the materials put on this job by the Taylor & Gaskin Company is immaterial because there is no testimony here that any of the materials used, and particularly the saddles for holding junior beams, were of such a nature that they could not be inspected. The testimony is undisputed that there is nothing about these particular appliances that could not have been inspected by the Utley Company at any time it chose to do so.

''If you find that this accident was caused by negligent workmanship on the part of the labor, combined with a defective saddle, then the Utley Com-

pany cannot prevail in this case against the Taylor
& Gaskin Company.''

Such instruction was to the effect that, as plain-
tiff had the right to inspect the steel materials used
by defendant, his failure to do so constituted con-
tributory negligence which would bar his recovery
against defendant.  As we have already concluded
that the contributory negligence of plaintiff as em-
ployer would not defeat his present action against
defendant, the question as to whether or not he in-
spected the steel is immaterial.  Such instruction
was erroneous and constituted reversible error.

Defendant contends that plaintiff cannot recover
in the present case because his employee was guilty
of contributory negligence as a matter of law.  From
our study of the record we are convinced that the
testimony presented a question of fact for jury de-
termination as to the employee's negligence, and
we are not disposed to hold him guilty of contribu-
tory negligence as a matter of law.

In view of our conclusions, which necessitate re-
versal and a new trial, other errors assigned and
questions presented do not require determination.

The judgment for defendant is reversed and a new
trial granted.  Plaintiff shall recover costs.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUT-
ZEL, BUSHNELL, and SHARPE, JJ., concurred.