## BLAY v. BLAY.

1. DIVORCE—EXTREME CRUELTY—RECORD.
   Dismissal of husband's cross bill for divorce on ground of extreme cruelty *held*, proper under record presented on wife's appeal from decree also dismissing her bill for separate maintenance.

2. HUSBAND AND WIFE—SEPARATE MAINTENANCE—ADULTERY—EVIDENCE
   The same proof of adulterous misconduct on the part of the husband which acts to bar his suit for absolute divorce furnishes grounds for the decree for separate maintenance for the wife in the absence of such proof of misconduct on her part as to deny her relief in a court of equity (CL 1948, § 552.301).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur, Divorce and Separation § 362.
[2] 17 Am Jur, Divorce and Separation §§ 34–36.
[3] 17 Am Jur, Divorce and Separation § 200.
[4] 17 Am Jur, Divorce and Separation § 223.

3. SAME—SEPARATE MAINTENANCE—ADULTERY—EVIDENCE.

 Record in wife's suit for separate maintenance *held*, not to contain evidence warranting dismissal of her bill on grounds of her misconduct, where it appears that husband's assertion of her coldness and irritation appears to be explicable on the ground that he was living with another woman (CL 1948, § 552.301).

4. SAME—SEPARATE MAINTENANCE—DIVORCE.

 A decree of divorce cannot be granted wife in an action founded on statutory bill for separate maintenance, where wife has taken the position that she desired to resume the marital relationship and did not desire a divorce (CL 1948, § 552.301).

Appeal from Wayne; Bohn (Theodore R.), J. Submitted October 12, 1960. (Docket No. 78, Calendar No. 48,345.) Decided December 2, 1960.

Bill by Eva I. Blay against Marvin W. Blay for separate maintenance, with cross bill asking divorce. Both bills dismissed. Defendant appeals. Plaintiff cross-appeals. Reversed and remanded for entry of decree of separate maintenance.

*David S. Levi*, for plaintiff.

*Kugel & Heffner* (*Anthony B. Roshak*, of counsel), for defendant.

EDWARDS, J. In this case plaintiff wife filed a bill of complaint for separate maintenance and defendant husband thereupon filed a cross bill for divorce. After full hearing before the Wayne county court, the judge decided that both were at fault and denied each the decree sought. Both parties appeal.

Eva and Marvin Blay were married in 1923 and lived together as man and wife until 1954. No children were born of the marriage. At the time of this hearing the parties were in their late fifties. They had purchased a 2-family flat in 1939. In 1952 Marvin Blay gave Eva a quitclaim deed to the home

and since then she has lived there and collected rent from the other unit.

In 1954 the husband filed a bill of complaint for divorce. This proceeding was ultimately dismissed for lack of progress. It appears that since November of 1954 Marvin Blay has not returned to the marital home to live.

In 1957 Marvin Blay procured a divorce decree in Mexico, which both parties concede to be invalid.

In November, 1957, Eva Blay filed the present suit for separate maintenance under PA 1889, No 243 (CL 1948, § 552.301 [Stat Ann 1957 Rev § 25.211]). Her bill of complaint charged the husband with adultery, desertion, and failure to support.

Marvin Blay filed an answer denying these charges and a cross bill for divorce, charging his wife with extreme cruelty represented by bad temper, quarrelsomeness, failure to go out with him, nagging, physical violence, and denial of marital rights. These charges in turn were answered and denied by the wife.

The circuit judge who heard this matter summarized his findings as follows:

"There are the usual accusations and cross-accusations. Both parties have testified to acts claimed to have been committed by the one against the other. The court is of the opinion that each of the parties has been guilty of improper conduct. Each of the parties has provoked the discord between them. Both are guilty of faults leading up to the divorce action. After 31 years of marriage, it would seem that both parties should exert more effort to live harmoniously together. It is the opinion of the court that the fault is equally divided between the parties; and the court, under the circumstances, denies the relief sought, both by the plaintiff in her bill of complaint for separate maintenance, and by the defendant in his cross bill for divorce."

The testimony reveals conclusive evidence of the "improper conduct" of the husband. In 1954 he left the marital home and went to live at the home of another woman. He made no secret of this fact from his wife. She testified, without objection:

"*Q.* Did he ever express himself as to a preference between you and Mrs. Loveland?

"*A.* He told me that she was a warm little thing and I was very cold."

The husband did not deny the implication of adultery:

"*Q.* You don't deny now that your relations with Mrs. Loveland were anything but impersonal, do you?

"*A.* I have never denied that."

And, indeed, on appeal his counsel takes the position that the wife has proved the necessary grounds for absolute divorce, and that the Court should grant her one even though she contends she doesn't want it.

We find no difficulty on this record in affirming the dismissal of the husband's cross bill of complaint for divorce, on grounds of his misconduct. *Demorest v. Demorest,* 259 Mich 156; *Kellogg* v. *Kellogg,* 171 Mich 518.

As to the wife's suit for separate maintenance, the problem is more complicated. It was filed under CL 1948, § 552.301 (Stat Ann 1957 Rev § 25.211), which provides:

"That whenever a husband shall, without good and sufficient cause, desert his wife, or shall have hereafter deserted his wife without good and sufficient cause, being of sufficient ability to support her, or shall have become an habitual drunkard since their marriage, or practiced extreme cruelty towards her, or committed the crime of adultery, or any other offense that entitles the wife to a decree of divorce

or of separation, and shall refuse and neglect to support his wife, either the wife or husband being a resident of this State, the circuit court in chancery of any county in this State in which said husband or wife shall reside, shall, on the application of the wife by petition, allot, assign, set apart and decree to her as alimony the use of such part of her husband's real and personal estate, or such proportion of his earnings, income or revenue as the court may determine, in its discretion, and during the pending of the proceeding may require the husband to pay such sums to carry on the proceeding, or for her support, as it shall deem necessary, in like manner as provided by section 6235 of Howell's statutes, being 4745 of the Compiled Laws of 1871,[*] in case of suit for divorce: Provided, That no decree shall be made in favor of the petitioner unless on the hearing either such a state of facts shall appear as would entitle her, as far as the husband's wrongful acts are shown, to a decree for divorce upon the grounds specified in the petition, or unless such a state of facts set out in the petition shall be proven as shall make it appear that the respondent has deserted the petitioner with intent to leave her without adequate means of support without good and sufficient cause, and the husband shall be permitted to allege in his answer to the petition any facts which would prevent or bar a divorce upon the grounds alleged in said petition, and to make proof of the same in conformity with such answer: And provided further, That an appeal from the final order or decree may be taken to the Supreme Court as in chancery cases, except that if the wife shall take such appeal, she shall not, in the discretion of the Court, be required to file an appeal bond."

Thus, the same proof of adulterous misconduct on the part of the husband which acts to bar his suit for absolute divorce furnishes grounds for the

---

[*] See, currently, CLS 1956, § 552.13 (Stat Ann 1957 Rev § 25-.93).—Reporter.

decree for separate maintenance sought by the wife —unless there is in turn such proof of misconduct on her part as to deny her relief in a court of equity.

In arguing such misconduct on appeal, the husband relies primarily upon assertions of the wife's lack of sociability and her coldness in the marital relationship.

The proofs relied upon by the husband in this regard are largely these, as testified to by him:

"*Q.* On these occasions when your wife did go out with you to these few affairs that you said she went out, how did she act towards you in front of other people?

"*A.* Well, you weren't a gentleman if you mixed in the activities. It was more to her liking if you sat there like a little dummy.

"*Q.* Did she say anything to convey these ideas to you?

"*A.* Oh, yes.

"*Q.* What would she say to you?

"*A.* She said that I was being a rowdy; that I wasn't a gentleman to act like other people acted.

"*Q.* Were other people present in the immediate vicinity at that time?

"*A.* That's right.

Plaintiff wife testified:

"*Q.* Did he at that time complain of any acts or action on your part as a wife that led him to file for divorce?

"*A.* Yes. He complained of a pessary button that I wore.

"*Q.* What did you do about that?

"*A.* I had it removed immediately. * * *

"*Q.* Was there any particular reason why you used a contraceptive?

"*A.* At Mr. Blay's request. He didn't wish a family."

Defendant husband testified:

"*Q.* During the period that you lived with the plaintiff did she ever refuse you intercourse when you requested it?

"*A.* That was a common rather than the unusual thing. She is just naturally a very cold person.

"*Q.* And what effect did this have on you?

"*A.* The same effect as it would have on any normal man."

The assertions of coldness were denied by the wife who also testified, without contradiction, to at least occasional renewals of intimacies between herself and her husband during 3 years when he was living with the other woman.

The husband's testimony also included the following:

"*Q.* Now, during the time that you lived and cohabited with the plaintiff, how did you get along together?

"*A.* As this lady has said on the stand here today, we got along fairly well. There was always a certain amount of dominance and control that was exercised by this lady."

Thus, we must read the husband's allegations of his wife's misconduct against a marital relationship of 31 years where all these same complaints existed but the parties "got along fairly well" up to 1954. And we cannot ignore the fact that the biggest change in the marital situation came in 1954 at about the time the husband formed a relationship with another woman whose attractions he found superior. Some subsequent coldness and irritation on the part of the wife would seem explicable.

We, of course, hear these matters *de novo* on appeal (*Bierie* v. *Bierie,* 348 Mich 440) while giving great weight to the findings of fact of the judge who heard the evidence (*Hartka* v. *Hartka,* 346 Mich

453). We have pondered the opinion of the circuit judge who saw and heard this couple and who concluded that "the fault is equally divided between the parties." We do not ignore the possibility that cold self-righteousness, insincerity or actual venom can be hidden in words with all the appearance of innocence on a printed page, but may be obvious in the courtroom through a witness's tone of voice or attitude, or demeanor. Of necessity, however, we must deal with the appellate record as it comes to us, and we cannot say that the record presented here contains evidence which warrants dismissal of the wife's bill on grounds of her misconduct.

All through these proceedings the wife has taken the position that she desired to resume the marital relationship and did not desire a decree of divorce. In such a situation, a decree of divorce cannot be granted in an action founded on CL 1948, § 552.301 (Stat Ann 1957 Rev § 25.211). *Lacey* v. *Lacey,* 189 Mich 271; *Sullivan* v. *Sullivan,* 323 Mich 397.

The dismissal of the cross bill of complaint is affirmed.

The dismissal of the bill for separate maintenance is reversed and the case is remanded for the taking of any needed additional testimony bearing on support, and for the entry of a decree for separate maintenance.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.