FORMICOLA v. FORMICOLA

1. DIVORCE—RECRIMINATION—ADULTERY—CRUELTY.
    The defense of recrimination did not exist where the husband sought a divorce on the grounds of adultery and the wife counterclaimed on the grounds of cruelty (MCLA § 552.10).

2. DIVORCE—DUTY TO PROVIDE—VOLUNTARY ABDICATION.
    Plaintiff husband's inability to assure an adequate income may have contributed to circumstances which led his wife to leave their marital home, but his conduct, absent any indication that he voluntarily abdicated his responsibility to provide support, does not, standing alone, warrant the granting of a divorce to the defendant wife.

3. DIVORCE—ADULTERY.
    Defendant wife's having left her husband and their children to live with another man constituted adequate ground for granting the husband a divorce.

4. DIVORCE—CLEAN HANDS—COMPARATIVE RECTITUDE.
    The rule in equity cases has been that those who seek the aid of equity must come into court with clean hands but there is

REFERENCES FOR POINTS IN HEADNOTES
[1]  24 Am Jur 2d, Divorce and Separation §§ 174, 231.
[2]  24 Am Jur 2d, Divorce and Separation § 125.
[3]  24 Am Jur 2d, Divorce and Separation § 118.
[4]  24 Am Jur 2d, Divorce and Separation § 173.
[5]  24 Am Jur 2d, Divorce and Separation § 410.
[6]  24 Am Jur 2d, Divorce and Separation § 392.
[7, 9]  24 Am Jur 2d, Divorce and Separation §§ 44, 52–54.
[8]  5 Am Jur 2d, Appeal and Error § 731.

a growing tendency in divorce cases to relax this rule on grounds of public policy or the particular proofs of the case and to adopt the doctrine of comparative rectitude or turpitude.

5. DIVORCE—ADULTERY—COMPETENCE TO TESTIFY—HUSBAND-WIFE.
   Neither a husband nor a wife is competent to testify regarding adulterous conduct in a divorce action (MCLA §§ 552.40, 600.2162).

6. ADULTERY—EVIDENCE—OPPORTUNITY FOR ADULTERY.
   Adultery cannot be conclusively proved by merely showing the opportunity for such behavior.

7. DIVORCE—ADULTERY—EVIDENCE—EXTREME CRUELTY.
   Testimony that defendant wife moved into an apartment with a man other than her lawful husband, that they signed the lease as husband and wife, and that they continuously cohabited in the leased premises is not proof of adultery, but it does establish very aggravated and extreme cruelty on the wife's part.

8. DIVORCE—APPEAL AND ERROR—PLEADINGS—AMENDMENT.
   The Court of Appeals has the power to amend a party's pleadings to conform to the proofs (GCR 1963, 820.1[7]).

9. DIVORCE—EXTREME CRUELTY.
   Plaintiff husband was entitled to a divorce on the ground of extreme cruelty, even though plaintiff's complaint had alleged adultery and defendant's counterclaim was on the ground of failure to provide support where the testimony concerning adultery was incompetent but testimony of the co-manager of an apartment building established that defendant was living there as the wife of another man, the husband's failure to provide adequate support was not the product of an intentional abdication of the duty.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 March 4, 1971, at Detroit. (Docket No. 7389.) Decided April 20, 1971.

Complaint by Anthony Formicola against Eleanor Kay Formicola for divorce. Counterclaim for divorce. Complaint and counterclaim dismissed. Plaintiff appeals by leave granted. Reversed and

remanded for entry of judgment for plaintiff on his complaint.

*Romulus Di Teodoro,* for plaintiff.

Before: V. J. BRENNAN, P. J., and QUINN and O'HARA,* JJ.

O'HARA, J.   Plaintiff husband commenced an action for divorce on the ground of adultery.   MCLA § 552.6(1) (Stat Ann 1957 Rev § 25.86[1]).   Defendant wife answered and counterclaimed for divorce on the ground of cruelty.   MCLA § 552.8 (Stat Ann 1957 Rev § 25.88).

At the trial, evidence was introduced that defendant had left her husband and their children and moved into an apartment with another man.   They signed the lease therefor as husband and wife.   As a defense against such conduct, defendant offered testimony of plaintiff's alleged refusal or inability to provide adequate finances to meet family needs.   Defendant furthermore alleged physical mistreatment by her spouse on several occasions.

Plaintiff responded that any lack of support was attributable to fluctuations in his business ventures.   Additionally, he contended that on the sole occasion on which he struck his wife he had ample provocation by reason of her drunken behavior at the time.

At the close of proofs, the trial court entered an opinion in which he held that "the parties by their own conduct forfeited any right to a judgment in this matter".   Accordingly, he dismissed plaintiff's complaint and defendant's counterclaim.   From the dismissal of his complaint, plaintiff alone appeals

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6 § 23 as amended in 1968.

on leave granted. Defendant has neither responded nor filed a cross-appeal.

The sole issue before us is whether the trial court erroneously dismissed plaintiff's complaint under the so-called "clean hands" doctrine.

As an initial observation, we note that the instant case does not come within the purview of the re-crimination defense. MCLA § 552.10 (Stat Ann 1957 Rev § 25.90). The husband is not alleged to be guilty of the same misconduct charged against his wife.

In the case at bar, while each party may bear some responsibility for the state of affairs complained of, the element of fault seems to us to be unequally apportioned. Plaintiff husband may not have been the most stable provider, but there is no indication that he voluntarily abdicated his responsibilities of providing support. His inability to assure an adequate income may, as found by the trial court, have contributed to the circumstances which led defendant to leave the marital abode, but his conduct, standing alone, cannot warrant the granting of a divorce to defendant. Conversely, the conduct of the wife cannot be justified, and, in itself, constitutes adequate ground for the granting of a divorce to her husband.

It has long been a rule that those who come into a court of chancery must have clean hands and, if not, the court will leave the parties as it finds them. However, there is a growing tendency in divorce cases to relax this rule, on grounds of public policy or the particular proofs in the case under consideration. The more modern view is to adopt a doctrine of comparative rectitude or turpitude. *Weiss* v. *Weiss* (1913), 174 Mich 431, 437.

In *Arix* v. *Arix* (1920), 212 Mich 438, a case in point, plaintiff wife sought a divorce on the ground

of mental cruelty. Defendant husband, in his cross-bill, charged his spouse with mental cruelty and adultery. In spite of the wrongdoing of both marital partners, a divorce decree was entered on behalf of the wife. In reversing the lower court and entering a decree granting defendant a divorce, the Michigan Supreme Court concluded (p 441):

"the cruelty of which the circuit judge found defendant guilty—that is, of threats of personal violence and the imputation of a lack of chastity—were, if not warranted by the facts, at least excusable, and * * * a divorce should have been granted defendant on his cross-bill upon the ground of adultery."

Also, see *Blay* v. *Blay* (1960), 362 Mich 56. Though *Arix, supra,* appears to be dispositive of the instant case, we note the failure by either of the parties or the trial court to raise the question of the competence of either the husband or wife to testify in a divorce action as to adulterous conduct.

MCLA § 552.40 (Stat Ann 1971 Cum Supp § 25-.116) provides in pertinent part that the testimony of neither husband nor wife shall be received in support of a charge of adultery.

Moreover, MCLA § 600.2162 (Stat Ann 1962 Rev § 27A.2162) provides in part that:

"in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify."

Inasmuch as the only witnesses who testified were the plaintiff husband and defendant wife, there is serious question whether any competent testimony was adduced.

However, at the outset of the proceeding, plaintiff's attorney moved the court to notice judicially all the records and files in the case, and in particular the proceedings in the custody petition held

prior to trial. I see a rather serious public policy question here. From that testimony, we quote, in relevant part, that of a Mrs. Mondari, a co-manager of the apartment house where defendant was residing:

"*Q.* Mrs. Mondari, do you recollect the defendant seated at the table?

"*A.* Yes, sir.

"*Q.* When did you first see the defendant?

"*A.* Uh, she came into—with a gentleman to lease an apartment.

"*Q.* And do you have that lease?

"*A.* Yes, sir.

"*Q.* May I see it, Are you uneasy? Would you like some water?

"*A.* No; just old age, I guess. I'm sorry.

(Whereupon plaintiff's Exhibit #1 was marked by the court reporter.)

"*Mr. Di Teodoro* [*for plaintiff*]: Your Honor, I propose to admit this lease into evidence as plaintiff's Exhibit One.

"*The Court:* All right.

"*Mr. Cyrul* [*for defendant*]: No objection.

"*Q.* (*By Mr. Di Teodoro, continuing*): Now, did the defendant affix her signature to that lease?

"*A.* Yes, sir.

"*Q.* Did she affix her signature as Eleanor K. Formicola, or another name?

"*A.* No, sir; as another name.

"*Q.* For what length of time is that lease?

"*A.* It's for one year.

"*Q.* And did the defendant take up residence at your apartment house after having executed that lease?

"*A.* Yes.

"*Q.* For how long a period of time? For how long a period of time did she live there?

"*A.* This—I think she went in May seventh. At least the lease was signed May seventh.

"*Q.* And how long has she lived there?

"*A*. Since then.

"*Q*. Does she remain living there now?

"*A*. Yes, sir.

"*Q*. To the best of your knowledge and belief, based upon your observations, what relationship is the defendant to the man who also executed that lease?

"*A*. Husband and wife.

"*Q*. Have you ever had conversation with the defendant?

"*A*. Only when the application was formed (*sic*) and 'good morning' and that's all.

"*Q*. Did you ever observe the defendant after the lease was executed?

"*A*. Well, I meet her in the hall.

"*Q*. And how often would you say you saw her?

"*A*. Sometimes once a month, once a week."

While adultery cannot be conclusively proved by the existence of opportunity for such behavior, *Kessinger* v. *Kessinger* (1960), 360 Mich 528, the foregoing testimony certainly establishes, at least, very aggravated and extreme cruelty[1] on the part of the wife.

On our *de novo* review of the record, we conclude there was ample testimony to support the grant of a decree of divorce to appellant husband.[2] The order of the trial court dismissing the complaint and counterclaim is vacated. The case is remanded to the trial court for entry of a decree of divorce for plaintiff husband. On remand, a hearing will be held as to custody, support, and any other essentials to be included in the decree.

Costs to plaintiff-appellant.

All concurred.

---

[1] See *Wells* v. *Wells* (1951), 330 Mich 448; *Dean* v. *Dean* (1955), 343 Mich 458; *Kelso* v. *Kelso* (1964), 373 Mich 592.

[2] Whether or not mental cruelty was specifically alleged, we are empowered to amend the pleadings to conform to the proofs. GCR 1963, 820.1(7).