PRUS v PRUS

OPINION OF THE COURT

1. DIVORCE—EXTREME CRUELTY—COMPARATIVE FAULT.

Granting an absolute divorce to plaintiff on the doctrine of comparative rectitude and turpitude was not error where each party charged the other with excessive drinking and extreme cruelty but the testimony of defendant's witnesses favored plaintiff's position.

2. DIVORCE—CHILD CUSTODY—APPEAL.

The orders and judgment of a trial judge in a child custody dispute are affirmed on appeal unless his findings are against the great weight of evidence or constitute a palpable abuse of discretion (MCLA 722.28).

DISSENT BY TARGONSKI, J.

3. DIVORCE—CHILD CUSTODY—BEST INTEREST OF CHILD.

*The trial judge in a divorce action did not have the opportunity to observe and determine the credibility of witnesses where the custody of minor children was awarded to the plaintiff by another circuit judge at a support hearing prior to the divorce, and he should have invoked the best-interest-of-the-child statute to determine the custody dispute (MCLA 722.23).*

4. DIVORCE—EXTREME CRUELTY—COMPARATIVE FAULT.

*On a complaint and counter-complaint for divorce, where evidence of plaintiff's overwhelming guilt of extreme and repeated cruelty far outweighed that of defendant who was not blameless, the divorce should be awarded to defendant.*

Appeal from Jackson, Kevin J. Daly, J. Submit-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 24 Am Jur 2d, Divorce and Separation § 228.
  Doctrine of comparative rectitude in divorce cases, 159 ALR 734.
[2, 3] 24 Am Jur 2d, Divorce and Separation § 793.

ted Division 2 March 8, 1972, at Lansing. (Docket No. 12683.) Decided October 25, 1972.

Complaint by Shirley Prus against Perry Prus for divorce. Counter-complaint for divorce. Judgment for plaintiff. Defendant appeals. Affirmed.

Jackson County Legal Aid Society, by *William B. Nichols, Jr.,* for plaintiff.

*Rappleye, Bannasch & Wilkins,* for defendant.

Before: LESINSKI, C. J., and BRONSON and TARGONSKI,* JJ.

LESINSKI, C. J. Plaintiff Shirley Ann Prus brought this action for a judgment of absolute divorce, alleging extreme cruelty. Defendant Perry Ray Prus filed a counter-complaint for absolute divorce, also charging extreme cruelty as his ground. From a judgment awarding plaintiff a divorce and custody of the three minor children still residing in the marital home, defendant husband appeals as of right.

Defendant raises two issues before this Court, arguing that the trial court erred in granting a divorce to plaintiff, rather than to him, and that the trial court erroneously awarded custody of the three minor children to plaintiff.

Being of an equitable nature, a divorce action is reviewed *de novo* in this Court. However, the trial court's findings of fact are accorded great weight for, as was stated in *Heckelman v Heckelman,* 3 Mich App 159, 164 (1966):

"[T]he trial court has the distinct advantage over this Court of seeing and hearing the parties and the wit-

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

nesses, observing their demeanor and attitudes, and is in a better position to weigh the evidence and determine the credibility thereof. This Court will not substitute its judgment for that of the trial judge, without showing of abuse of discretion."

In regard to whether the trial court committed error by granting an absolute divorce to plaintiff, a review of the record reveals that both plaintiff and defendant charged each other with various acts of wrongdoing and that each generally denied the accusations of the other. The only other testimony at trial was provided by five witnesses called by defendant. The trial court, in a written opinion, stated that, disregarding the mutual denials and accusations of the parties themselves, the testimony adduced by defendant's witnesses at trial tended to favor plaintiff's position.

Especially significant, in the trial court's opinion, was the testimony of Ruth Lowe, who was the Prus's next door neighbor. Mrs. Lowe testified that she had seen plaintiff inebriated only once, in contrast to defendant's position that plaintiff was an alcoholic. Mrs. Lowe related that she could remember only one occasion when plaintiff was acting in a loud manner, and that was because defendant was striking their son. Mrs. Lowe further told of plaintiff's complaints about the beatings which she received from defendant. On the other hand, another neighbor, Beverly Pittman, testified that plaintiff "always had a beer bottle", and that the situation at the marital home, in the absence of defendant, "was really a riot". However, she further stated that defendant recently "had a woman over there" at the marital home.

Defendant, in his brief on appeal, discusses the recrimination defense, MCLA 552.10; MSA 25.90. On the basis of the testimony at trial, though,

defendant is asserting, not that the trial court erred in granting a divorce at all in this case, but that the trial court erred in granting a divorce to plaintiff, instead of to defendant. Concerning the recrimination defense, this Court, in *Formicola v Formicola,* 32 Mich App 417, 420, said:

"It has long been a rule that those who came into a court of chancery must have clean hands and, if not, the court will leave the parties as it finds them. However, there is a growing tendency in divorce cases to relax this rule, on grounds of public policy or the particular proofs in the case under consideration. The more modern view is to adopt a doctrine of comparative rectitude or turpitude."

We cannot say, on this record, that the trial court abused its discretion in finding that the comparative guilt of defendant outweighed that of plaintiff. See *Jaikins v Jaikins,* 370 Mich 488 (1963).

We also reject defendant's contention that the trial court erroneously granted custody of the three minor children to plaintiff. The standard which we employ in reviewing child custody issues is mandated by statute. MCLA 722.28; MSA 25.312(8) states that:

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue."

After examining the record in this case, we hold that the trial court did not err under this standard in awarding custody of the children to the plaintiff wife.

Affirmed.

Bronson, J., concurred.

TARGONSKI, J. *(dissenting).* For purposes of disposition of this matter I accept the majority's position with reference to the law on a divorce action being a review *de novo* and the fact that the trial court's findings of fact are accorded great weight of evidence. I also agree with the statutory citation relative to review of custody issues but deem that another section of our laws relative to the best interests of the children is more applicable. Further, I see the testimony in an altogether different light than did the majority.

The plaintiff charged that her husband beat her and the children. She contended that the defendant husband drank a fifth of whiskey per day and that he threatened her life and the children's lives. The plaintiff, however, offered no other testimony to corroborate her allegations. This situation, coupled with the fact that the defendant husband worked for ten consecutive years at the same place of employment without any difficulty in maintaining his work schedule, refutes the plaintiff's contention of a fifth of whiskey per day. One can reach no other conclusion but that such testimony by the plaintiff was a gross exaggeration.

The trial court admittedly made disposition of the custody of the minor children in this cause on the basis of testimony taken by another circuit judge in connection with a motion for temporary support on a date much earlier than the trial on the merits. I do not believe that we can properly permit this disposition of custody of the children to be made on the basis of testimony that the trial court admits was not heard by the trial court itself. This is especially true where we say that on review we give great weight to the findings of the trial court because of its opportunity to observe

and determine the credibility of the witnesses. *Heckelman v Heckelman,* 3 Mich App 159 (1966); *Winkelman v Winkelman,* 20 Mich App 305 (1969).

Another very disturbing factor was Mrs. Prus' own testimony that a 17-year-old daughter was not living with her mother who had custody by way of temporary order. It developed rather that this 17-year-old was staying in a two-room apartment with her married sister and brother-in-law, together with their minor child, in addition to one who is characterized as the plaintiff's boyfriend and his 3-year-old child. To permit a 17-year-old to live under these crowded conditions in a two-room apartment certainly does not speak well of the exercise of custody obligations which the plaintiff had under the terms of the temporary order. This is especially true when this 17-year-old daughter, as a 14-year-old, was encouraged by the plaintiff into a relationship with an 18-year-old boy in the naval service. This relationship was terminated only when the father forcibly broke up a necking party in the car in front of the house.

The attitude of the now 16-year-old boy, Richard, indicating a desire to continue in the custody of the father, with whom he had been temporarily residing, is of considerable significance. I believe it was error for the court to refuse to consider this desire on the part of the son. If fact, I believe that the court was bound to give consideration to such preference under our statutes. MSA 25.312(3); MCLA 722.23.

There is ample testimony to show that the man had grounds for divorce in light of chronic alcoholism on the part of the wife. *Knapton v Knapton,* 28 Mich App 316 (1971). The findings of the trial court as to extreme and repeated cruelty of the defendant with respect to the plaintiff are not

well-grounded and are against the great weight of
the evidence, and clearly erroneous. While the
husband was not blameless, his comparative guilt
was far outweighed by the wife's overwhelming
guilt. The husband should, therefore, be granted
an absolute divorce. *Jaikins v Jaikins,* 370 Mich
488 (1963).

On the question of the custody of the children, I
believe that we are bound to consider the best-
interests-of-the-child statute, MCLA 722.23; MSA
25.312(3), which states:

" 'Best interest of the child' means the sum total of
the following factors to be considered, evaluated and
determined by the court:

"(a) The love, affection and other emotional ties exist-
ing between the competing parties and the child.

"(b) The capacity and disposition of competing parties
to give the child the love, affection and guidance and
continuation of the educating and raising of the child in
its religion or creed, if any.

"(c) The capacity and disposition of competing parties
to provide the child with food, clothing, medical care or
other remedial care recognized and permitted under the
laws of this state in lieu of medical care, and other
material needs.

"(d) The length of time the child has lived in a stable,
satisfactory environment and the desirability of main-
taining continuity.

"(e) The permanence, as a family unit, of the existing
or proposed custodial home.

"(f) The moral fitness of the competing parties.

"(g) The mental and physical health of the competing
parties.

"(h) The home, school and community record of the
child.

"(i) The reasonable preference of the child, if the
court deems the child to be of sufficient age to express
preference."

As I view the testimony, I would be forced to the following conclusions had I been sitting as a trier of the facts, most of which are contrary to the findings of the trial court:

1. The plaintiff is an alcoholic and the defendant does indulge in alcoholic beverages, but apparently in moderation, since it has not conflicted with his obligations at his place of employment for a long period of satisfactory attendance.

2. The mother encouraged the second daughter, at the age of 14, in a relationship with an 18-year-old boy on leave from the service, which practice was frowned upon by the defendant father.

3. That after the defendant left the marital home of the parties and plaintiff enjoyed the custody of the minor children by virtue of an order of the lower court, the conduct of the children deteriorated and especially the girls were permitted relationships with young men which neighbors who testified in the proceedings below labelled "a riot" rather than normal boy-girl relationship.

4. That the 14-year-old daughter referred to above, and now aged 17, is not living with the mother but rather with a 18-year-old recently married sister and brother-in-law, together with another grown man and his 3-year-old child. All of these people living in a two-room apartment is hardly conducive to a proper growing-up for this second daughter and, in any event, the accommodations are not adequate for the child under these circumstances and should never have been accepted by the trial court.

5. The son, Richard, had expressed a desire to be with his father and he went to live with his mother only because he was afraid that the police would arrest his father for failure to comply with the court order.

6. There is testimony suggested by the conclusion that the youngest daughter has some fear of the father because of discipline once administered under peculiar circumstances in the home. However, in light of the fact that the only discipline that seems to have been applied to the children came from the father, this attitude on the part of the youngest daughter is understandable.

7. That the defendant did attempt to visit his children for purposes of visitation after entry of the temporary custody order but decided that discretion was the greater part of valor when a boyfriend of one of the daughters called him up and threatened to "cut [his] gut out" if he kept coming around.

8. That the children's schoolwork suffered and at least the son, Richard, became a troublemaker at school during the period of time that they were in the custody of the plaintiff. The school records indicate a marked increase in chronic absenteeism from the school on the part of the children during the period that they were in the plaintiff's care as contrasted with the time that defendant was able to exercise some discipline over the children.

9. That defendant sought to avoid trouble because he wanted custody of the children and wanted to do it legally. Just a few months prior to trial a police call was made at the Prus' household on a claim of a family disturbance. On arrival the police officer found the plaintiff drunk and creating a disturbance, mouthing obscenities, while the defendant was sober and indicated a desire to cooperate. This disturbance occurred at the home of the defendant, where the plaintiff and a man identified as "her boyfriend" were seeking to gain entrance into the defendant's residence at 2:30 in the morning.

In light of the fact that it is my belief that the divorce should have gone to the defendant as well as custody of the children to the defendant, it would be necessary to somewhat revise the property settlement arrived at by the trial court. The distribution itself seems to be proper except that if the custody of the children was given to the defendant there would be no need for the plaintiff to occupy the home in preference to the children and there would be no need to delay the distribution of the equities as provided in the judgment of divorce. In other words, I would accelerate the property settlement by requiring the defendant forthwith to pay to the plaintiff the sums of money provided as her share in the equity in the house and furniture.

For the reasons set forth hereinabove I believe the judgment of the trial court should be vacated and remanded for entry of divorce awarded to the defendant, consistent with the terms of this opinion.

However, since the trial court is affirmed by the majority, defendant may desire, in the interests of the children, to reopen the question of custody by appropriate application in the trial court. Such procedure would facilitate a new Friend of the Court investigation and report regarding the children's welfare and could serve as a basis for a new custody determination, especially in view of the long lapse of time since the prior report.