# STATE OF MICHIGAN

# COURT OF APPEALS

ADRIENNE DOELLE,

      Plaintiff-Appellant,

v

RYAN NEMETH, ABC ENTERTAINMENT,
LLC, DAVID SCHNEIDER, and KING'S
COURT CASTLE, INC.,

      Defendants,

and

OLDE WORLD CANTERBURY VILLAGE,
INCORPORATED,

      Defendant-Appellee.

UNPUBLISHED
October 9, 2018

No. 338152
Oakland Circuit Court
LC No. 2015-150059-NO

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

In this personal injury action, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant, Olde World Canterbury Village, Inc. ("OWCVI"), and dismissing her claims against OWCVI, with prejudice. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

This case arises out of an accident that occurred during "Kids Fest," an event organized and promoted by OWCVI, and held on OWCVI property. Plaintiff sustained injuries after the rear car of the trackless Thomas the Train ride in which she and her young child were riding tipped over. Witnesses to the accident stated that the train ride was driven too fast, and in circles, when the car tipped over.

OWCVI is a business consisting of a parcel of property located in Lake Orion, Michigan. There are several businesses located on OWCVI's property, known as Canterbury Village, and periodically, festivals or other events are held at its premises. OWCVI's Kids Fest event was held in May 2014 to create foot traffic for the businesses in the Village. The event had several

-1-

attractions for children, including bounce houses, clowns, balloon animals, crafts, magic, a monster truck ride, a petting zoo, pony rides, police cars, fire trucks, face painters, and the Thomas train ride. Keith Aldridge, who was in charge of Kids Fest for OWCVI, secured vendors for the various attractions and advertised and promoted the event. OWCVI paid the vendors a flat fee for their time, and OWCVI kept the proceeds from the admission fee and tickets sold for the attractions, including the train ride.

Before the Kids Fest event, Aldridge was unable to secure his usual contractor to provide a Thomas train ride, so he asked Matt Flynn, an acquaintance in the event planning business, to find someone to provide a train ride. Flynn contacted and hired David Schneider, who owns ABC Entertainment, LLC ("ABC"), to provide the train ride at Kids Fest. ABC's train ran like a golf cart and pulled two cars holding three to four, or four to six, people. It had a maximum speed of 5 mph, but when at full capacity, the speed decreased to around 2 to 3 mph. The train "performed" approximately 400 times per year and Schneider, who acquired the train 12 to 15 years ago, never had any problems or issues with it. According to Schneider, the train was "very stable" and its cars were "extremely well welded" and "not flimsy in any way." Schneider, in turn, hired Ryan Nemeth, who worked as a subcontractor for ABC/Schneider, to drive the train ride at Kids Fest. Nemeth had never driven the train before, but he had driven a golf cart, which operated in the same manner. Aldridge had no dealings with Schneider or Nemeth and did not know who Flynn had arranged to provide the train ride.

Schneider transported his train ride equipment to OWCVI on his trailer, and, on the morning of Kids Fest, met Nemeth at OWCVI, where Schneider set up the train ride and checked it and ensured that it was working properly. No one told Schneider where to set up the train ride, so he walked around OWCVI's premises to find a location. Schneider, who did not like the train to be near cars, found an open area with no cars where he desired to set up the train ride, but Flynn, who was on the premises, told Schneider he had to set up the train ride near the front parking lot. Schneider's opinion differed, but he set up the train where Flynn told him to. Schneider then instructed Nemeth how to drive and operate the train ride. Schneider showed Nemeth the route he wanted him to drive the train and Nemeth practiced driving the exact route with Schneider. Schneider felt comfortable that Nemeth could drive the train.

Aldridge, who was on-site during the Kids Fest event, did not greet or acknowledge Schneider or Nemeth, did not provide any instruction or direction to Schneider or Nemeth regarding what he wanted them to do or where, or the route he wanted them to drive the train, and never had any contact with them before the accident. Aldridge believed, but did not know whether, Flynn greeted "the train people", but testified in his deposition that Flynn was not performing any tasks for OWCVI on the day of the event and he believed Flynn was "just observing."[1] Aldridge normally left the task of operating the train and determining its route up to the train vendor and did not instruct Flynn where to operate the train ride. Nemeth also never

---

[1] Aldridge further testified that the only tasks Flynn performed for OWCVI for the Kids Fest event was securing a train vendor and designing a website.

met or had a conversation with anyone from OWCVI, and Schneider was the only person who provided Nemeth any direction and instruction regarding the route and operation of the train.

During the Kids Fest event, Nemeth who was driving the Thomas train ride, and Schneider, who was driving another kiddie ride, gave rides to patrons of Kids Fest who purchased ride tickets at a ticket table operated by OWCVI. Schneider watched Nemeth drive the train when he was behind him and had no concerns about the turns and felt Nemeth "had a handle…. on driving the train."

After Nemeth gave train rides for an hour or so, or a couple hours, without incident, plaintiff and her young daughter loaded the rear car of the train ride. As the ride progressed, plaintiff thought the train was going "kind of fast" and the children she was with said they were scared. Other witnesses on the same train ride as plaintiff also felt that the train was going too fast. When the train came to an "open area" or a "wide entrance," in an area where no cars were driving or parked, it went in a circle and then proceeded to do another circle. About a quarter of the way through the second circle, the rear train car began tipping over, spectators were screaming, and the car tipped over. Plaintiff was trapped inside the tipped over car from the waist down and was being dragged by the train. People yelled for the driver to stop because he did not realize the car had tipped over, and, while Nemeth was making the circle, he heard the passenger behind him say "stop." He stopped and looked behind him and saw that the rear car had tipped over. Nemeth got out and lifted the car up and another man pulled plaintiff out. Plaintiff's head, arm, and knee were bleeding, her arm appeared to be broken, and she had road rash on her face, arm, chest, and leg. Plaintiff was transported by EMS to the hospital. She allegedly suffered a fracture of her left elbow requiring surgery. Following the accident, someone told Aldridge that the train was "going too fast" and Aldridge, who was "very angry," told Schneider to pack up his stuff and leave. Nemeth helped Schneider load up the train ride and they left. Aldridge never paid Schneider.

At the scene, witnesses told police that the train was going "too fast" and in circles. According to the police report, Nemeth stated that he thought the ride "was a little boring, so to give them . . . some excitement he would make about three circles at the end of the ride before heading back to the starting point." Nemeth testified at his deposition that he did not recall stating that to the police but admitted it was possible. Nemeth recalled doing a couple circles at the end of the ride, which was not what Schneider had instructed him to do. Nemeth drove the train at its maximum speed. No one ever told Nemeth he was driving "too fast" or "crazy."

Following the accident, plaintiff filed this cause of action alleging negligence. Count I of the complaint alleged that Ryan Nemeth, the driver of the train ride, was directly liable for driving the train in a reckless manner, causing the car to tip over, and resulting in serious injury to plaintiff. Count II alleged that ABC and Schneider were liable for the negligent acts of Nemeth, their employee or agent, as well as their own negligence. Lastly, Count III, at issue here, alleged negligence against OWCVI for breaching its duties owed to plaintiff, a business invitee, by "[e]mploying personnel who are unskilled, incompetent and unfit for such employment," "failing to exercise reasonable care in hiring competent personnel," failing "to use

ordinary care" or to "exercise reasonable care" for plaintiff's safety, and "[o]ther such negligence."[2] Plaintiff's complaint did not specifically allege that OWCVI was vicariously liable for the negligence of the train ride's owner, operator, and/or driver based on agency principles or under an ostensible agency theory, which she claims on appeal.

OWCVI moved for summary disposition of plaintiff's claims under MCR 2.116(C)(8) because Michigan does not recognize a cause of action for the negligent selection or retention of an independent contractor. See *Reeves v Kmart Corp*, 229 Mich App 466, 475-476; 582 NW2d 841 (1998).[3] OWCVI also sought summary dismissal of plaintiff's remaining claims of ordinary negligence under MCR 2.116(C)(10) on the basis that there was no genuine issue of fact that OWCVI did not breach a duty owed to plaintiff. OWCVI argued that there was no question of fact that OWCVI did not retain sufficient control over the manner in which ABC, Schneider, and/or Nemeth operated the train ride to hold OWCVI vicariously liable for their alleged negligence. OWCVI also argued that it did not owe plaintiff a duty to exercise care in the selection and retention of an independent contractor and there was no evidence that OWCVI engaged in any other conduct that violated its general duty to use due care and not to unreasonably endanger plaintiff to hold OWCVI directly liable under a theory of ordinary negligence.

At the hearing on OWCVI's motion, argument focused on whether the evidence was sufficient to establish a triable issue whether OWCVI retained control over the operation of the train to be held liable for the negligent acts of ABC, Schneider, and/or Nemeth. After the hearing, the trial court summarily dismissed plaintiff's claims against OWCVI, with prejudice, concluding that a claim for the negligent hiring of an independent contractor was not a viable claim in Michigan and OWCVI did not exercise sufficient control over the operation of the train, as a matter of law, to be held responsible for its co-defendants' negligence. Plaintiff appeals this order, claiming that summary dismissal of her claim of vicarious liability against OWCVI was improper under agency principles and a theory of ostensible or apparent agency.[4]

---

[2] This appeal concerns only OWCVI. The other defendants were dismissed, with prejudice, during the lower court proceedings pursuant to stipulation or consent of the parties.

[3] Plaintiff conceded, as she does on appeal, that Michigan does not recognize a cause of action for the negligent selection or retention of an independent contractor. See *Reeves*, 229 Mich App at 475-476.

[4] OWCVI briefly asserts that plaintiff's complaint did not specifically allege that ABC, Schneider, or Nemeth were actual or ostensible agents of OWCVI or that OWCVI was vicariously liable for their negligence. Generally, a plaintiff may not litigate claims not specifically raised in his pleadings. *Belobradich v Sarnsethsiri*, 131 Mich App 241, 246; 346 NW2d 83 (1983). However, it is evident from the record that the parties implicitly agreed to litigate whether OWCVI could be held vicariously liable for the negligent acts of ABC, Schneider, and/or Nemeth, which plaintiff argues on appeal. *Zdrojewski v Murphy*, 254 Mich App 50, 61; 657 NW2d 721 (2002); MCR 2.118(C)(1) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised

## II. STANDARD OF REVIEW

"This Court reviews a trial court's decision on a motion for summary disposition de novo." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734-735; 892 NW2d 442 (2016) (citation omitted). "When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether a genuine issue of material fact exists." *Id.* at 734 (citation omitted). "The motion is properly granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted). "Where there is a disputed question of agency, any testimony, either direct or inferential, tending to establish agency creates a question of fact for the jury to determine." *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009) (citations omitted).

## III. VICARIOUS LIABILITY BASED ON ACTUAL AGENCY

Plaintiff claims that the trial court erred in granting summary disposition in favor of OWCVI because genuine issues of material fact existed regarding whether OWCVI had the right to exercise control over the operation of the trackless train ride to hold OWCVI vicariously liable for the negligent acts of the train ride's owner, operator, and/or driver under agency principles. We disagree.

"Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others." *Id.* at 735. At common law, a property owner could not be held liable to third parties for the negligence of independent contractors and their employees. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53-54, 61; 684 NW2d 320 (2004); *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 72; 600 NW2d 348 (1999) (citations omitted). "Instead, the independent contractor is immediately responsible for job safety." *Id.* (citations omitted). Thus, "[a] premises owner who hires an independent contractor is generally not vicariously liable for injuries that the contractor negligently causes[.]" *Campbell v Kovich*, 273 Mich App 227, 233; 731 NW2d 112 (2006) (citation, quotation marks, and [] omitted); *Reeves*, 229 Mich App at 472 ("The general rule is that an employer of an independent

---

by the pleadings."). The issues were raised and argued by the parties before the trial court and the record does not reflect that OWCVI ever objected on the basis that plaintiff had not specifically pleaded a claim of vicarious liability or apparent agency, despite being aware, based on its summary disposition motion and plaintiff's reply, that plaintiff was relying on such a claim. This Court has the power to amend the pleadings to conform to the proofs. *Formicola v Formicola*, 32 Mich App 417, 423 n 2; 189 NW2d 21 (1971); MCR 7.216(1) (This Court may, in its discretion, "exercise any or all of the powers of amendment of the trial court"); MCR 2.118(C)(1) (allowing amendment of the pleadings to raise an issue tried by the parties' implied consent upon motion of any party at any time, even after judgment).

contractor is not liable for the contractor's negligence."). " 'The rationale for this rule is that an independent contractor is not subject to the control of the employer, and therefore the employer should not be held vicariously liable for actions outside of its control.' " *Campbell*, 273 Mich App at 233-234, quoting *Janice v Hondzinski*, 176 Mich App 49, 53; 439 NW2d 276 (1989). "Indeed, people generally hire independent contractors to do work that they do not have the time or the expertise to do themselves. It would not be efficient, then, to require them to learn enough about the work to oversee its performance and supervise safety procedures." *Reeves*, 229 Mich App at 473.

Our Courts, however, have recognized that "[a] party may be liable for the negligence of an independent contractor where the party retains and exercises control over the contractor or where the work is inherently dangerous." *Id.* at 472 (citation omitted).[5] "The concept of "retained control" is pertinent to two distinct theories of liability: (1) the vicarious liability of an employer pursuant to the doctrine of respondeat superior, and (2) the direct liability of an owner or general contractor pursuant to the doctrine of retained control." *Candelaria*, 236 Mich App at 72-73. At issue on appeal is plaintiff's claim of vicarious liability, in which case "evidence of an employer's retained control is relevant to the issue whether there was in fact a contractee-contractor relationship."[6] *Id.* at 73.

"Similarly, in the absence of an employer-employee relationship, vicarious liability may also attach through the concept of agency." *Laster*, 316 Mich App at 735. This Court has explained:

> A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort. Vicarious liability is indirect responsibility imposed by operation of law. Courts impose indirect responsibility on the principal for his or her agent's torts as a matter of public policy, but the principal, having committed no tortious

---

[5] While plaintiff argued before the trial court that the train ride was an inherently dangerous activity, she has not raised that claim on appeal, and thus, has abandoned the claim. "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) (citations omitted).

[6] Plaintiff also argued before the trial court that OWCVI was directly liable for Aldridge's negligent conduct in failing to provide reasonably safe premises and to properly oversee the Kids Fest event it undertook. Plaintiff, however, limits her claims on appeal to the claims of vicarious liability arising out of the alleged negligent acts or omissions of ABC, Schneider, and/or Nemeth. Plaintiff also did not assert or pursue a premises liability claim on appeal. To the extent her argument may implicate OWCVI's direct liability under the doctrine of retained control, review is inappropriate because she did not raise the issue in her Statement of Questions Presented, *Marx v Dep't of Commerce*, 220 Mich App 66, 81; 558 NW2d 460 (1996), or argue the merits of the issue, *Midland v Helger Constr Co, Inc*, 157 Mich App 736, 745; 403 NW2d 218 (1987) Thus, plaintiff has abandoned any claim of direct liability on the part of OWCVI for breaching any independent duty of ordinary care owed to plaintiff.

act, is not a "tortfeasor" as that term is commonly defined. Because liability is imputed by law, a plaintiff does not have to prove that the principal acted negligently. Rather, to succeed on a vicarious liability claim, a plaintiff need only prove that an agent has acted negligently. Concomitantly, if the agent has not breached a duty owed to the third party, the principal cannot be held vicariously liable for the agent's actions or omissions. [*Id.*, quoting *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 347; 852 NW2d 180 (2014), vacated in part on other grounds 497 Mich 927 (2014).]

"[F]undamental to the existence of an agency relationship is the right to control the conduct of the agent with respect to the matters entrusted to him." *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 558; 581 NW2d 707 (1998) (internal citations omitted). "In an agency relationship, it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability." *Laster*, 316 Mich App at 735 (citations omitted). Therefore, "[i]n Michigan, the test for a principal-agent relationship is whether the principal has the right to control the agent." *Little v Howard Johnson Co*, 183 Mich App 675, 680; 455 NW2d 390 (1990) (citation omitted). "Conversely, it is this absence of control that explains why an employer is generally not liable for the actions of an independent contractor." *Laster*, 316 Mich App at 735, citing *Campbell*, 273 Mich App at 233-234. Therefore, in determining whether an owner can be held liable for negligence of its contractor, either as its agent, as plaintiff argues, or an employee, the control test applies. *Laster*, 316 Mich App at 735-737; *Campbell*, 273 Mich App at 233-234.

" 'An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.' " *Laster*, 316 Mich App at 735-736, quoting *Utley v Taylor & Gaskin, Inc*, 305 Mich 561, 570; 9 NW2d 842 (1943) (quotation marks and citation omitted from *Utley*, emphasis omitted from *Laster*). " 'If the employer of a person or business ostensibly labeled an 'independent contractor' retains control over the method of work, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant.' " *Laster*, 316 Mich App at 736, quoting *Campbell*, 273 Mich App at 234 (quotation marks and citations omitted from *Campbell*; emphasis omitted from *Laster*); See also *Candelaria*, 236 Mich App at 73 (citations omitted). "[I]t is clear that not just any type of control will suffice to transform an independent contractor into an employee or agent; rather the control must relate to the method of the work being done." *Laster*, 316 Mich App at 736; *Campbell*, 273 Mich App at 234 ("The test for whether a worker is an independent contractor or an employee is whether the worker has control over the method of his or her work."); *Candelaria*, 236 Mich App at 73 (Where one "contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished," he is an independent contractor). Pertinent considerations under the control test are "who controlled the work, the hours, the process, and the methods of the work involved." *Kidder v Miller-Davis Co*, 455 Mich 25, 32; 564 NW2d 872 (1997). "Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the

employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results." *Utley*, 305 Mich at 570 (internal citation and quotation marks omitted).

Plaintiff's claim of vicarious liability against OWCVI was predicated on the negligence of the driver of the train ride, Nemeth, whom she alleged drove in a reckless manner causing her injury. It is undisputed that Flynn, at the direction of Aldridge, who was in charge of OWCVI's Kids Fest event and an acquaintance of Flynn, "booked" or secured ABC/Schneider, who owned and operated a trackless train ride, to provide the Thomas train ride at OWCVI's Kids Fest event for a period of time, in exchange for "a day's" fee. Schneider, the owner of ABC, provided a "booking confirmation," or invoice, to "Matt Flynn, Michigan Kids Fest," "spelling out" that they would be at Kids Fest and the amount they were charging, and Flynn paid a deposit to secure their services. Schneider did not receive any documents or direction from Flynn or OWCVI setting forth any additional terms or requirements regarding their arrangement. Schneider, in turn, hired Nemeth to drive ABC's train ride at the Kids Fest event. From this undisputed testimony, it is apparent that ABC/Schneider was carrying on an independent business, which Flynn (for OWCVI) hired to provide a task—providing a kiddie train ride at OWCVI's Kids Fest event in exchange for a flat fee—without providing any direction regarding how ABC/Schneider would accomplish the task. It is clear that ABC was hired as an independent contractor. *Laster*, 316 Mich App at 735-736.

Accordingly, given ABC's status as an independent contract OWCVI can only be held vicariously liable for any negligent acts if OWCVI retained sufficient control over ABC's work. *Laster*, 316 Mich App at 735-737; *Campbell*, 273 Mich App at 233-234; *Little*, 183 Mich App at 679-680. To "transform" an independent contractor into an agent or an employee so that the principal or the employer could be held vicariously liable for the contractor's negligent acts or omissions, the control retained "must relate to the method of the work being done." *Laster*, 316 Mich App at 736-737; *Campbell*, 273 Mich App at 234; *Candelaria*, 236 Mich App at 73. The threshold question therefore becomes whether OWCVI retained sufficient control over the manner in which ABC, and its agents or employees, Schneider and Nemeth, performed the contracted-for work, i.e., providing train rides at Kids Fest, such that they "transform" into agents or employees of OWCVI. Only under those circumstances can OWCVI be held vicariously liable for the negligence of ABC, Schneider, or Nemeth. *Laster*, 316 Mich App at 736-737; *Campbell*, 273 Mich App at 234-235; *Little*, 183 Mich App at 680.

We conclude that OWCVI did not retain sufficient control over the manner in which ABC, Schneider, and Nemeth performed the contracted-for-work. In determining whether an agency has been created, we give consideration to the relations of the parties as they in fact exist under their agreements or acts. *St Clair Intermediate Sch Dist*, 458 Mich at 558, citing *Saums v Parfet*, 270 Mich 165, 170-171; 258 NW 235 (1935). Here, there is no evidence that the "agreement" Schneider, on behalf of ABC, entered into with Flynn (for OWCVI) addressed any terms beyond the date and hours the train rides would be provided and the fixed fee that would be charged, none of which addressed the method or manner in which ABC/Schneider would

provide or operate the train ride.[7] The fact that OWCVI controlled the logistics, i.e., the date, the place, and time of operation, does not equate to "control over the method of the work being done", i.e., the manner in which ABC was to provide the train rides, from which the negligence arose. For instance, there is no evidence that OWCVI retained any right by the "agreement" to control the hiring or supervision of ABC/Schneider's employees or agents, including Nemeth, the driver of the train ride, whose negligence allegedly caused plaintiff's injuries, or to control the train ride equipment or manner in which the rides would be operated. The evidence of the "agreement" between ABC/Schneider and Flynn, on behalf of OWCVI, does not indicate that OWCVI retained the right to control the work ABC/Schneider was hired to perform.

Further, the evidence presented is not sufficient to establish that OWCVI actually "directed, supervised, or otherwise had any input," or exercised control, over how ABC and its agents, Schneider and Nemeth, performed the contracted-for work of providing the train rides at the Kids Fest event. *Laster*, 316 Mich App at 739; *Campbell*, 273 Mich App at 234-235. Instead, Schneider, as ABC's owner and operator, maintained and provided the train ride equipment for the event, transported the train ride to the event with his vehicle, set up the ride at the event, inspected and adjusted the ride to ensure it was mechanically safe, employed Nemeth to assist him and to drive the train, directed and instructed Nemeth regarding how to operate and drive the train, and watched Nemeth drive the train while the rides were in progress; all without OWCVI's supervision or oversight. Clearly, the independent nature of ABC/Schneider's work, as well as the parties' one-time agreement regarding ABC's services, is consistent with the definition of an independent contractor. See *Utley*, 305 Mich at 570 (providing guidance for determining who controls the work performed).

Moreover, there was no evidence that OWCVI directed or exercised any control over the specific manner or method of providing and operating the train rides. It is undisputed that Aldridge, who was "in charge" of the Kids Fest event for OWCVI, had no dealings with Schneider or Nemeth at all: he did not greet or acknowledge them at the event; did not provide any instruction or direction to Schneider or Nemeth regarding what he wanted them to do or where; did not provide the route for the train ride; and never had any contact with them before the accident. Although Flynn told Schneider where to set up the train on the day of the event, Aldridge's testimony was undisputed that never told Flynn where to operate the train and

---

[7] Flynn, who Aldridge asked to secure a vendor to provide a train ride for OWCVI's Kids Fest event, was an agent of OWCVI with respect to hiring ABC. *St Clair Intermediate Sch Dist*, 458 Mich at 558; quoting *Saums*, 270 Mich at 170-171 (defining "agency" as " 'every relation in which one person acts for or represents another by his authority.' ") " 'The characteristic of the agent is that he is a business representative. His function is to bring about, modify, effect, accept performance of, or terminate contractual obligations between his principal and third persons.' " *St Clair Intermediate Sch Dist*, 458 Mich at 558, quoting *Saums*, 270 Mich at 172. On the evidence presented, there is no question that Flynn was acting for OWCVI, at Aldridge's direction, to bring about an agreement between OWCVI and ABC when he secured ABC to provide the train ride, and thus, Flynn was acting as an agent of OWCVI with respect to hiring ABC.

normally left that decision up to the train operator. Further, Flynn was not performing any tasks on behalf of OWCVI on the day of the event. Nemeth testified that he received instruction and direction solely from Schneider regarding how to operate and drive the train, as well as the route to take, and Nemeth never met or had any discussions with anyone from OWCVI before the accident.

In an effort to establish a question of fact, plaintiff argues that OWCVI exercised sufficient control over the operation of the train by dictating the train route and shutting down ABC's services after the accident. However, as discussed, there was no evidence that OWCVI ever directed Schneider, Nemeth, or Flynn regarding the manner or method of operating or driving the train, or its route. Contrary to plaintiff's assertion, there was no evidence that OWCVI ever exercised any purported right to intervene in the operation of the train.[8] Additionally, OWCVI's act of terminating ABC/Schneider's services after the accident did not constitute control over the method or manner of providing train rides. *Id.* at 736-737. Rather, the interaction merely ended the arrangement. See Restatement Torts, 2d, § 414 ("It is not enough that he has merely a general right to order the work stopped. . . . Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail."); *Miller v Great Lakes Steel Corp*, 112 Mich App 122, 127; 315 NW2d 558 (1982) (citations omitted) ("The owner must retain the right to partially control and direct the actual [] work" of the contractor to render the owner liable for the contractor's negligence and the "right to terminate anyone who did not comply with the owner's rules and regulations was insufficient as a matter of law to constitute 'control' of the work.").

In sum, we agree that the record evidence was insufficient to establish that OWCVI retained the right to or actually exercised control over the method or manner in which ABC, or its agents or employees, Schneider or Nemeth, operated the train ride so as to "transform" them into agents or employees of OWCVI. Although OWCVI controlled the Kids Fest event, OWCVI never had the right to control, and never actually exerted control, over the manner or method in which ABC, Schneider, or Nemeth operated the train ride. *Laster*, 316 Mich App at 736-737; *Campbell*, 273 Mich App at 234-235. Accordingly, OWCVI cannot be held vicariously liable for any negligent operation of the train, *Laster*, 316 Mich App at 736-737, 739; *Campbell*, 273 Mich App at 234-235, and OWCVI was entitled to summary disposition.

## IV. VICARIOUS LIABILITY BASED ON OSTENSIBLE AGENCY

---

[8] Plaintiff states that "Aldridge wanted the train to travel through the village and showcase it" and "insisted" on the route, and OWCVI "dictated where the train was to be operated" and Aldridge "had a say in the route." However, these assertions are unsupported by the record.

Plaintiff next argues that the trial court erred in dismissing her claims of vicarious liability against OWCVI because genuine issues of material fact existed regarding whether the operator of the train was an apparent or ostensible agent of OWCVI.[9] We disagree.

"An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 252; 273 NW2d 429 (1978) (citation and quotation marks omitted). To prove someone is the ostensible agent of a principle, the plaintiff must prove:

> [First] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Grewe*, 404 Mich at 253 (quotation marks and citations omitted); see also *VanStelle v Macaskill*, 255 Mich App 1, 9-10; 662 NW2d 41 (2003).]

Essentially, the principal must have done something that would create in the third party's mind the reasonable belief that the agent was acting on behalf of the principal. *VanStelle*, 255 Mich App at 10.

Plaintiff argues that because OWCVI sponsored, promoted, and hosted the Kids Fest event held on its property, and because the patrons of Kids Fest had no way of knowing that the attractions, including the train ride, were not provided by OWCVI's agents or employees, but by independent contractors, ABC is the ostensible agent of OWCVI. True, OWCVI's promotional materials announced the featured attractions and did not identify the contractors who operated them, and all tickets for the attractions were sold by OWCVI. However, plaintiff has not proven that she relied on any purported agency relationship to her detriment. Accordingly, OWCVI was entitled to summary disposition on plaintiff's ostensible agency vicarious liability claim.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

---

[9] We note that although plaintiff raised the issue of vicarious liability under an apparent agency theory in her response to OWCVI's motion for summary disposition, the trial court did not directly address this issue. Generally, an issue is preserved for review by this Court if it was raised before and addressed by the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999), citing *Adam*, 197 Mich App at 98. However, as here, "this Court may properly review an issue if the question is one of law and the facts necessary for its resolution have been presented." *Adam*, 197 Mich App at 98-99 (citation omitted).