# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 21, 2018

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

156341

SEJASMI INDUSTRIES, INC.,
        Plaintiff/Counterdefendant-
        Appellee,

v

A+ MOLD, INC., d/b/a TAKUMI
MANUFACTURING COMPANY,
        Defendant/Cross-Defendant,

and

QUALITY CAVITY, INC.,
        Defendant/Counterplaintiff/Cross-
        Plaintiff/Third-Party Plaintiff-
        Appellant,

and

NKL MANUFACTURING, INC.,
        Third-Party Defendant.
_____/

SC: 156341
COA: 336205
Macomb CC: 2014-004273-CB

On October 9, 2018, the Court heard oral argument on the application for leave to appeal the July 27, 2017 order and the April 5, 2016 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MARKMAN, C.J. (*dissenting*).

I respectfully dissent from this Court's order denying leave to appeal. Plaintiff Sejasmi Industries contracted with defendant A+ Mold, Inc. (doing business as Takumi Manufacturing) for the construction of several molds for the fabrication of plastic parts by plaintiff. Takumi in turn contracted with defendant Quality Cavity for it to perform some of the construction work. The molds were duly constructed and delivered to plaintiff. Plaintiff then paid Takumi on a timely basis; however, Takumi failed to pay defendant in full. Consequently, defendant sought to enforce its statutory moldbuilder's liens against the molds possessed by plaintiff, see MCL 445.619, and plaintiff filed a declaratory action seeking a court order stating that the liens had been extinguished. The trial court granted summary disposition in favor of plaintiff, and the Court of Appeals affirmed in part and remanded to the trial court for further proceedings in a split decision, with Judge HOEKSTRA dissenting in part. *Sejasmi Indus, Inc v A+ Mold, Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 5, 2016 (Docket No. 328292). This Court then scheduled oral argument on defendant's application for leave to appeal. 501 Mich 968 (2018).

This case concerns statutory protections for moldbuilders in the tool-and-die industry, in particular the proper understanding of MCL 445.619, which establishes a

nonpossessory moldbuilder's lien. This provision is a part of the statutory scheme set forth by 2002 PA 17, which added MCL 445.611 through MCL 445.620c to 1981 PA 155 as amended by 1986 PA 103, entitled "An act to provide for ownership rights in dies, molds, and forms for use in the fabrication of plastic parts under certain conditions and to establish a lien on certain dies, molds, and forms." The provisions within the act specifically concerning moldbuilder's liens are MCL 445.619 through MCL 445.620c. The remaining provisions are not directly relevant here.

To better understand why the Legislature enacted MCL 445.619-- a law that remains unexamined by this Court in the 16 years since its enactment in 2002-- I find helpful the *amicus curiae* brief filed by the American Mold Builders Association, explaining as the rationale for the law that "prior to the 2002 lien law, mold and tool builders had a practice of waiting until an unpaid tool came back to the toolmaker for service, or engineering changes, and then holding it hostage until the molder . . . paid past-due balances." *Amicus Curiae* Brief of the American Mold Builders Association et al, p 7. "Granting a nonpossessory lien virtually stopped that practice overnight, for those toolmakers that took the time to file liens, resulting in fewer disruptions to the supply chain." *Id*. "The tooling company . . . can [now] charge less for the mold or tool, begin production sooner, and accept deferred payment arrangements, all of which allow for faster time to market and lower pricing for the supply chain and ultimately the end consumer." *Id*. Put simply, MCL 445.619 not only protects moldbuilders by establishing security for payment through a nonpossessory lien, but also provides benefits for the tool-and-die industry as a whole.

With that in mind, MCL 445.619 sets forth the creation and attachment of a moldbuilder's lien:

> (1) A moldbuilder shall permanently record on every die, mold, or form that the moldbuilder fabricates, repairs, or modifies the moldbuilder's name, street address, city, and state.

> (2) A moldbuilder shall file a financing statement in accordance with the requirements of [MCL 440.9502].

> (3) A moldbuilder has a lien on any die, mold, or form identified pursuant to subsection (1). *The amount of the lien is the amount that a customer or molder owes the moldbuilder for the fabrication, repair, or modification of the die, mold, or form*. The information that the moldbuilder is required to record on the die, mold, or form under subsection (1) and the financing statement required under subsection (2) shall constitute actual and constructive notice of the moldbuilder's lien on the die, mold, or form.

(4) The moldbuilder's lien attaches when actual or constructive notice is received. The moldbuilder retains the lien that attaches under this section even if the moldbuilder is not in physical possession of the die, mold, or form for which the lien is claimed.

(5) The lien remains valid until the first of the following events takes place:

(a) The moldbuilder is paid the amount owed by the customer or molder.

(b) *The customer receives a verified statement from the molder that the molder has paid the amount for which the lien is claimed.*

(c) The financing statement is terminated. [Emphasis added.]

Here, the parties do not dispute that Takumi is the "customer," defendant the "moldbuilder," and plaintiff the "molder." See MCL 445.611(a) through (c). Nor do the parties dispute that defendant possessed valid liens against the molds because the requirements of MCL 445.619(1), (2), and (4) had been satisfied. The sole issue is whether the liens possessed by defendant were extinguished pursuant to MCL 445.619(5)(b) when plaintiff sent a "verified statement" to Takumi indicating that plaintiff had paid Takumi for the construction of the molds. That is, the issue is whether the "customer receive[d] a verified statement from the molder that the molder has paid the amount for which the lien is claimed." Plaintiff contends that MCL 445.619(5)(b) does not require a verified statement that payment was made to the *moldbuilder* for the lien amount, while defendant argues that the provision does, in fact, require such a statement. For the following reasons, I agree with defendant that MCL 445.619(5)(b) requires a verified statement that payment was made to the *moldbuilder* for the lien amount.

First, while it is true that MCL 445.619(5)(b) does not explicitly identify to whom the payment must be made by the molder, when that section is read in its entirety, it is apparent that MCL 445.619(5)(b) requires a verified statement that payment was made to the *moldbuilder* for the lien amount. In particular, MCL 445.619(3) states in relevant part that "[t]he amount of the lien is the amount that a customer or molder owes the moldbuilder" for the mold. That is, "the amount" refers to the amount owed to the moldbuilder. This makes sense, as the entirety of this statute, MCL 445.619, concerns the subject of moldbuilder's liens. Furthermore, although "paid" is not specifically defined in the statute, the pertinent definition is "to [have] discharge[d] or settle[d] (a debt, obligation, etc.), as by transferring money or goods, or by doing something." *Random House Webster's College Dictionary* (2001). Consequently, for a molder to have "paid the amount for which the lien is claimed," it must have discharged a debt to the moldbuilder. Thus, where MCL 445.619(5)(b) refers to a statement that "the molder

has paid the amount," it seems best understood to refer to a statement that the molder has paid the amount owed to the moldbuilder for the mold. This undisputedly did not occur here.

Second, when interpreting statutes, "the entire act must be read and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Detroit Trust Co v Hartwick*, 278 Mich 139, 148 (1936), quoting *Grand Rapids v Crocker*, 219 Mich 178, 182-183 (1922). Here, taking a slightly broader look at the context of the statute of which MCL 445.619(5)(b) is a part, this too seems to contemplate payment to the moldbuilder. MCL 445.620 provides that to enforce a lien acquired under MCL 445.619, the moldbuilder must provide notice to the customer and the molder stating that "a lien is claimed, the amount that the moldbuilder claims it is owed for fabrication, repair, or modification of the die, mold, or form, and a *demand for payment*." (Emphasis added.) There can be little doubt that a "demand for payment" by the moldbuilder pertains to payment of the amount owed to the moldbuilder itself. And MCL 445.620a further provides that "if the *moldbuilder has not been paid the amount claimed in the notice* . . . within 90 days . . . , the moldbuilder has a right to possession of the die, mold, or form . . . ." (Emphasis added.) MCL 445.620a thus also seemingly contemplates payment to the moldbuilder. Furthermore, MCL 445.620c(1) provides that "[i]f the proceeds of the sale are greater than the amount of the lien, the proceeds shall first be paid to the *moldbuilder in the amount necessary to satisfy the lien*. All proceeds in excess of the lien shall be paid to the customer." (Emphasis added.) Once again, MCL 445.620c(1) seemingly and altogether logically contemplates payment to the moldbuilder. Put simply, if MCL 445.619(5)(b) did not contemplate payment to the moldbuilder, it would stand alone as the only provision within a statutory scheme concerning moldbuilder's liens that contemplated payment to someone *other* than the moldbuilder.

In concluding otherwise, the Court of Appeals reasoned that if MCL 445.619(5)(b) required a verified statement that the moldbuilder had been paid in full, then that provision would be duplicative. *Sejasmi*, unpub op at 5 ("To require, as suggested by [defendant], that the verified statement in subsection (5)(b) submitted by the molder to the customer must indicate that the molder paid the moldbuilder would be merely a duplication of and an additional step effectuating subsection (5)(a) rather than a separate and distinct mechanism to invalidate the lien . . . ."). That is, according to the Court of Appeals' understanding of defendant's argument, MCL 445.619(5)(a) would require that the moldbuilder had been paid in full and MCL 445.619(5)(b), immediately following, would require that the moldbuilder had been paid in full *and* that the customer had received a verified statement of that fact. Consequently, the receipt of a verified statement by the customer would never be a relevant occurrence in actually extinguishing a lien because such lien necessarily would already have been extinguished by the preceding circumstance that the moldbuilder had been paid in full. Thus, according to the

Court of Appeals, MCL 445.619(5)(b) would serve no purpose in the overall statutory scheme because the lien would already have been extinguished under MCL 445.619(5)(a).

Respectfully, the Court of Appeals' reasoning here is flawed because it fails to recognize the industry-specific purpose of MCL 445.619(5)(b). "When an OEM [original equipment manufacturer, i.e., a customer such as an automobile manufacturer] contracts with a tier-1 supplier [i.e., a molder], the contract often requires that the tier-1 provide legal documentation that there are no liens on the mold or tool." *Amicus Curiae* Brief of the American Mold Builders Association at 9.[1] "This ensures there will be no interruptions in the supply chain later from a foreclosure on the lien." *Id*. In some cases, however, even when the molder has fully paid the moldbuilder for the mold, the moldbuilder will fail or refuse to acknowledge that the lien has or should be extinguished. See *id*. That is, the moldbuilder will not cooperate with the molder by confirming in writing that it has been "paid the amount owed," MCL 445.619(5)(a), or by terminating the financing statement, see MCL 445.619(5)(c). Perhaps, for example, the moldbuilder believes that it is owed more money for the mold. See *Amicus Curiae* Brief of the American Mold Builders Association, *id*. at 15. In such a case, the molder need not sue the moldbuilder to establish that the lien has been extinguished to satisfy its contract with the OEM. *Id*. at 9. Rather, under MCL 445.619(5)(b), "[o]nce the molder has paid the moldbuilder for the lien, it can confirm to the OEM . . . that the lien is extinguished by sending the verification, and the OEM can rely on that verification because the verification itself extinguishes the lien by operation of law." *Amicus Curiae* Brief of the American Mold Builders Association at 9. Stated otherwise, once "[t]he customer receives a verified statement from the molder that the molder has paid the amount for which the lien is claimed," MCL 445.619(5)(b), the lien is extinguished, and the molder and the moldbuilder can litigate any dispute in court without the threat of an interruption in the supply chain because of a foreclosure on the lien. Put simply, it appears that the purpose of MCL 445.619(5)(b) is to facilitate commerce in the tool-and-die industry even when the moldbuilder fails or refuses to acknowledge that it has been paid in full and that the lien is accordingly extinguished. Because the Court of Appeals did not recognize that MCL 445.619(5)(b) has a purpose independent from MCL 445.619(5)(a), its analysis of the former provision was deficient.

Moreover, an assessment of the Court of Appeals' reasoning further illustrates the flaw in its interpretation. MCL 445.619(5)(a) does not explicitly specify to whom the

---

[1] I recognize that in this particular case, the "customer" is not the end-user of the molded parts, such as an automobile manufacturer that uses molded parts to build an automobile. However, in most instances, "[t]he customer is . . . the manufacturer desiring an end product made by the molder using a mold." *Amicus Curiae* Brief of the American Mold Builders Association at 16. "The money for the mold typically flows from the customer to the molder and then to the moldbuilder . . . ." *Id*.

"amount" is owed. Rather, it is only *implicit* within MCL 445.619(5)(a) that the "amount" is owed to the moldbuilder. That is, although MCL 445.619(5)(a) only explicitly states that the lien is extinguished when the "moldbuilder is paid the amount owed by the customer or molder," it means that the lien is extinguished when the "moldbuilder is paid the amount owed to the *moldbuilder* by the customer or molder." The Court of Appeals thus had no difficulty in understanding MCL 445.619(5)(a) to include such an implicit limitation, yet failed to recognize that MCL 445.619(5)(b) encompasses the same implicit limitation.

The Court of Appeals also reasoned that interpreting MCL 445.619(5)(b) as requiring a verified statement that payment has been made to the moldbuilder would "read into the statutory provision language that is absent." *Sejasmi*, unpub op at 5. I respectfully disagree. "[T]he Legislature is not required to be overly repetitive in its choice of language." *Robinson v City of Lansing*, 486 Mich 1, 16 (2010). See also *Rock v Crocker*, 499 Mich 247, 266 (2016) ("[I]t was unnecessary for the Legislature to repeat the phrase 'the time of the occurrence' in every instance given that the context of MCL 600.2169(1)(a), (b), and (c) makes it clear that the time of the occurrence is the relevant point in time."). As already explained, MCL 445.619, as well as the broader context of the statute concerning moldbuilder's liens, contemplates payment to the moldbuilder. The Legislature was not required to repeat "to the moldbuilder" throughout the statute, when the context sufficiently makes clear that payment "to the moldbuilder" is the obvious and manifest subject of these provisions. Indeed, if the Court of Appeals was correct that MCL 445.619(5)(b) did not contemplate payment to the moldbuilder, there would then be no textual or otherwise principled reason why a moldbuilder's lien could not be extinguished under that provision whenever a customer receives a verified statement from the molder that it has paid the amount for which the lien is claimed to *anyone*. For example, if the moldbuilder claimed a lien in the amount of $100,000, a verified statement from the molder to the customer that the molder has paid $100,000 in taxes to the federal government would apparently extinguish the lien by the Court of Appeals' reasoning since that amount constitutes "the amount for which the lien is claimed." Such an interpretation of MCL 445.619(5)(b), however, is obviously absurd and unreasonable and contrary to the principle that "[w]hen undertaking statutory interpretation, the provisions of a statute should be read reasonably and in context." *McCahan v Brennan*, 492 Mich 730, 739 (2012).

Adhering to the reasoning of the Court of Appeals, which suggests that any statutory reference to payment must expressly identify the party to whom the payment must be made, would lead to other peculiar and potentially chaotic outcomes concerning liens in the tool-and-die industry. In addition to cases such as the instant one, in which a moldbuilder's lien can be extinguished by a molder without the moldbuilder having received any payment or notice, consider MCL 445.618, which states concerning the molder's lien:

> A molder has a lien, dependent on possession, on any die, mold, or form in the molder's possession belonging to a customer for the amount due the molder from the customer for plastic fabrication work performed with the die, mold, or form. A molder may retain possession of the die, mold, or form until the *amount due is paid*. [Emphasis added.]

It strikes me as reasonably clear that the molder retains a possessory lien until the amount due *to the molder* has been paid. However, because MCL 445.618 also does not explicitly specify to whom the amount due must be paid, the possessory lien is again seemingly extinguished whenever anyone has been paid the amount due, at least according to the reasoning of the Court of Appeals. I respectfully submit that no reasonable person would interpret MCL 445.618 in such an odd manner. Instead, when MCL 445.618 is also read reasonably and in context, it is clear that payment is again contemplated to the molder. And I discern no principled reason why MCL 445.619(5)(b) should be interpreted any differently. When that statute is read reasonably and in context, it is clear that it contemplates payment to the moldbuilder.

As a consequence of our decision not to correct what I view as the incorrect opinion below, it will stand as the only authority of this state concerning MCL 445.619(5)(b). Moldbuilders will as a result be left in a position of uncertainty in which their nonpossessory liens may be unilaterally extinguished by the molder absent payment or even notice being made to the moldbuilder, despite the commands of an industry-focused statute designed to afford specific lien protections to those engaged in this industry. Such an outcome, I believe, is inconsistent with the Legislature's intentions in MCL 445.619 to afford actual, not illusory, protections for participants in the industry that is the subject of this provision. Accordingly, I respectfully dissent from this Court's order of denial and instead would reverse the judgment of the Court of Appeals and remand to the trial court for further proceedings consistent with the analysis herein.

VIVIANO, J., did not participate due to a familial relationship with the presiding circuit court judge in this case.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 21, 2018

a1218

Clerk